**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **MALISSA R. HARMON,** *pro se* | : | **Case No: 1:19-CV-670** |
| **1512 N. Breiel Road** | | |
| **Middletown, Ohio 45042** | : | |
| | | |
| *Plaintiff,* | : | **JUDGE MICHAEL R. BARRETT** |
| | | |
| vs. | : | |
| | | |
| **HONEYWELL INTELLIGRATED** | : | **SECOND AMENDED COMPLAINT** |
| **Corporation Service Company** | | |
| **7901 Innovation Way** | : | |
| **Mason, Ohio, 45040** | | |
| | : | |
| **Defendant** | | |

### THE PARTIES

1. Plaintiff Malissa Harmon ("Plaintiff") was a citizen and resident of the State of Ohio at the time the events giving rise to her claims against the Defendants occurred.

2. Honeywell Intelligrated ("Honeywell") is a leading North-American-based, single-source provider of automated material handling solutions and intelligent software that drive fulfillment productivity for retailers, manufacturers and logistics providers around the world.

### JURISDICTION AND VENUE

3. This Court has federal question and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and under 28 U.S.C. § 1367 because the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution, specifically Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000 and the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §621 et seq.

4. Venue is proper under 28 U.S.C. §1391(b)(1)(2).

## FACTUAL ALLEGATIONS

5.      Intelligrated operated as an independent company until 2016 when Honeywell purchased Intelligrated and integrated it into its other business operations.

6.      According to Honeywell they are committed to providing equal employment opportunity without discrimination based on any protected category, including race and color.

7.      Under their own Code of Business Conduct every Company Employee is responsible for reporting any incident of inappropriate conduct through proper channels. The Company considers retaliation to be a serious violation of the Company's Code of Business Conduct and will not be tolerated (see Exhibit A Attachments A-1 through A-7).

8.      Plaintiff began her employment with Intelligrated on September 27, 2010 without incident, took pride in her work and was a dedicated employee during her career with both Intelligrated and Honeywell. Plaintiff had been promoted twice and received "Outstanding Ratings" in 2015, 2016 and 2017 prior to her termination, the highest rating an Employee can have with Honeywell.

9.      Before filing her complaint outside the company with the Ohio Civil Rights Commission ("OCRC"), the Plaintiff made numerous attempts throughout her employment and has documented events since 2015 reporting her complaints of unethical behavior, racial discrimination, hostile work environment and retaliation to proper channels. Plaintiff requested Honeywell to resolve the unfair treatment on multiple occasions before her termination on October 3, 2019.

10.     The Plaintiff is African American and was 43 years old when she filed a complaint with the OCRC on September 27, 2017 because she complained of protected activities and was retaliated against by her employer Honeywell Intelligrated for participating in a protected activity.

11.     Before her last day of work due to a medical leave after suffering her first miscarriage and mental breakdown, Honeywell Intelligrated subjected the Plaintiff to a hostile work environment, different terms and conditions, diluted her tasks that resulted in the loss of earnings due to not being able to work overtime, transferred her to less desirable position, defamed and ruined her "Outstanding" rating and reputation, fabricated performance improvement plans (PIP), denied her a fair investigation regarding her complaints, denied her opportunities to transfer and denied her from receiving promotions because of her age, race and in retaliation for participating in a protected activity.

12.     Due to growth within the Installation Department, Honeywell created a new position. The new position was posted for an Installation Administration Specialist, Plaintiff applied and was promoted to the position in March 2015. The Plaintiff was advised that she would be mirroring Cindy Levitz ("Levitz"), Caucasian Installation Administration Supervisor, assist in managing the Installation Field Admin team and be the Vendor Labor Coordinator.

13.     As an Installation Administrative Specialist, Plaintiff's first responsibility was to transition the department to adhere to company purchasing policies and processes. Plaintiff was also responsible for administering subcontractor and vendor requisitions and invoicing for the department. Specifically, when the Company initiates business with a subcontractor or vendor, Plaintiff was responsible for submitting requisitions to obtain purchase orders for the goods and/or services. After the subcontractors/vendors submitted invoices to the Company, Plaintiff was responsible for reconciling the invoices against the applicable purchase orders and responsible for updating management regarding vendor labor activity, and responsible for

approving vendor labor timesheets for Honeywell, Plaintiff's role was vital to the department for checks and balances.

14.     Shortly after taking over the department's vendor labor purchasing rights from Installation management Plaintiff advised, Nick Choi, VP Installations, whom she took direction from, of suspected unethical purchasing activity within the department and complained of segregation and mistreatment from members of Installation.

15.     In June of 2015 Plaintiff was pulled into David Clarke's ("Clarke") office, Caucasian Mechanical Manager Installation, he used profanity and ridiculed the Plaintiff accusing her of auditing the Installation Department. The Plaintiff was told "don't go rocking the boat" and "you're dealing with the good old boys". The Plaintiff advised Nick Choi, VP Installation of the incident.

16.     Because the hostility environment continued to get worse Plaintiff informed Nick Choi ("Choi"), Asian Vice President, that Levitz and Clarke were interfering in her work and Levitz was not training her as Choi instructed. Levitz was terminated during Plaintiff's August 2015 – October 2015 pregnancy leave. Upon her return Honeywell Intelligrated had Misty Sanderson ("Sanderson"), Caucasian, as acting Installation Administration Supervisor.

17.     Ryan Balzer ("Balzer") had Sanderson train the Plaintiff with the tasks Sanderson had been performing while an Installation Field Administrative Assistant, which required her to seek authorizations from the Plaintiff to assist her with her tasks when she was a Field Admin Assistant. Balzer had the Plaintiff train Sanderson on all the tasks that Levitz and the Plaintiff had been performing for the office 6 months prior to the Plaintiff going on maternity leave. Honeywell Intelligrated eventually promoted Sanderson to the Supervisor's position and also

promoted her husband, Brett Sanderson, Caucasian to Installation Manager without posting the positions.

18.     The hostility came because the Plaintiff would question, per policy, the approving of questionable vendor related invoices and vendor payroll activity submitted from management in which she was responsible for verifying and approving. The retaliation intensified when the Plaintiff questioned Sanderson's husband's vender related purchase orders and expenses.

19.     Plaintiff reached out to Jennifer Phelps, HR Generalist in October 2016 to advise of the unethical activity being harbored within the Installation department and to complain of Sanderson's harassment and mismanagement because nothing internally was being resolved.

20.     Once the Plaintiff involved HR Sanderson's efforts to create a hostile work environment increased. She would raise her voice at the Plaintiff, got close in the Plaintiff's face, Sanderson took Admin responsibilities from her and gave them to younger Caucasian admins as the Plaintiff trained them. Honeywell Intelligrated allowed Amanda Hale, Caucasian to work from home but denied the Plaintiff this same opportunity. Honeywell Intelligrated assigned parts of the Plaintiff's tasks to Maria Floyd, Caucasian, a position created without posting, who was allowed to work from home on a daily basis and the wife of Garland Floyd, Caucasian, Installation Mechanical Coordinator.

21.     Another minority employee, Lucy Gomez, resigned in June 2017 and stated it was because she was subjected to the same unfair treatment that the Plaintiff had been subjected to by Sanderson and Balzer (see Exhibit H Attachments H-1 – H-3).

22.     Marillia Vidal-Clarisey, HR Generalist, Bernie Hess, VP HR, Nick Choi, VP Installations and David Schweltzer, Honeywell officials had knowledge about allegations against Sanderson and Balzer but harbored these unlawful and discriminatory acts.

23.     On July 28, 2017 the Plaintiff reached out to HR for the 2nd time and spoke with Vidal-Clarisey, HR Generalist to file a hostile work harassment and discrimination complaint against both Misty Sanderson, Installation Administration Supervisor and Ryan Balzer, Operation Manager Installation. Plaintiff advised Vidal-Clarisey she was being forced to blind approve department invoices, timesheets and expenses that were not properly verified and that the Plaintiff was unwilling to participate and complained of these unethical processes.

24.     Vidal-Clarisey first advised the Plaintiff to report her complaints to the Global Integrity Helpline. Vidal-Clarisey later contacted Plaintiff after work hours to advise the Plaintiff not to call the Global Integrity Helpline, per her manager Bernie Hess ("Hess"), VP Human Resources. Vidal-Clarisey stated they will only involve Honeywell HR if it needed to be expedited. The Plaintiff felt unease about Vidal-Clarisey call.

25.     Per Honeywell's Code of Conduct and Work Harassment Policy the Plaintiff contacted the Global Integrity Helpline.

26.     Two weeks later the Plaintiff was advised by Global Integrity Helpline "not enough evidence was given to investigate". Plaintiff disagreed.

27.     August 21, 2017 Balzer and Sanderson attempted to place Plaintiff on an unwarranted Performance Improvement Plain because she expressed her complaints about Sanderson's and Balzer's mistreatment and harassment to Human Resources.

28.     On August 23, 2017 the Plaintiff had to request for the 3rd time that Human Resources intervene as the hostile work environment and retaliation intensified.

6

29. Plaintiff advised management and HR numerous times that vendors were billing invoices for services not approved by Purchasing, services and goods not delivered to customers were being unlawfully charged to customer's purchase orders, vendors were billing incorrect labor rates and expenses to incorrect customer purchase orders, vendors were overbilling labor hours and expenses to the customers purchase orders, vendor timesheets were being billed to the incorrect customer purchase orders, personal purchases by employees were being charged to customer purchase orders these issues were being harbored by Honeywell Intelligrated Management and HR.

30. Once the Plaintiff went outside the company on September 27, 2017 and filed a discrimination and retaliation complaint with the OCRC against Honeywell the discrimination intensified by diluting the Plaintiff's duties immediately and was more blatant in subjecting her to even a harsher hostile work environment (see Exhibit K Attachments K-1).

31. Honeywell moved her to the Accounting Department on two different occasions and permanently in December 2017. Each move Honeywell distributed the Plaintiff's Installation Administrative tasks to younger Caucasians and to Caucasian family and friends, as the Plaintiff trained them.

32. On September 29, 2017 Balzer, Caucasian Operations Manager of Installation, for the second time tried to coerce the Plaintiff into signing an unwarranted Performance Improvement Plan, which the Plaintiff refused to sign again.

33. Balzer and Sanderson then reinforced their retaliation with multiple emails accusing the Plaintiff for going outside their direction. Balzer denied her the use of earned vacation hours which caused loss in pay and segregated the Plaintiff from her co-workers telling her "she cannot talk to anyone and to stop involving management and contacting HR".

34.     In October 2017, OCRC notified Honeywell Intelligrated of Plaintiff's complaints.

35.     On December 12, 2017 in a meeting attended by Plaintiff, Vidal-Clarisey, HR Generalist, and Hess, VP HR, Honeywell concluded "they found no evidence of a hostile work environment or retaliation against the Plaintiff. Also, stated "Sanderson had a good working relationship with her team". Honeywell failed to investigate the allegations against Ryan Balzer reported by the Plaintiff.

36.     By late January 2018 Honeywell had removed all Installation Admin duties and Installation system rights from the Plaintiff, although a month earlier Honeywell told OCRC Plaintiff would be returned to her normal duties by the end of December 2017. Plaintiff remained in the Accounting Department filing and passing out mail, with no mention from Honeywell of her return to the Installation Department any time prior to her medical leave.

37.     February 14, 2018 Plaintiff went on an approved FLMA medical leave after suffering her first miscarriage and mental breakdown, she was actively participating in an open OCRC investigation regarding her complaints against Honeywell.

38.     Plaintiff was on an approved FLMA leave for her Pregnancy condition when she suffered Pregnancy Discrimination. Honeywell though its Healthcare Administrator, Cigna (LINA) denied her extension for Short-Term Disability ("STD") income benefits on April 19, 2018 that she was entitled to under the Honeywell Family Plan for Pregnancy. As the result of Cigna's (LINA) denial she suffered financial hardship pain and suffering.

39.     Plaintiff was on an approved FLMA leave and suffered FLMA Interference when Honeywell though its Healthcare Administrators unfairly denied the Plaintiff her requested extension of her STD income benefits on April 19, 2018 while under her Pregnancy related

condition and before her FLMA exhausted. As the result of Cigna's (LINA) denial she suffered financial hardship and unwarranted pain and suffering for her loss of income.

40.     Plaintiff suffered FLMA Retaliation while on an approved FLMA leave as she participated in the OCRC's investigation, a protected activity. Honeywell denied the Plaintiff her requested extension for income benefits while participating in a protected activity. As the result of Cigna's (LINA) denial she suffered financial hardship and unwarranted pain and suffering for her loss of income.

41.     On July 26, 2018 OCRC found "Probable Cause" of race, age and retaliation against Honeywell Intelligrated, after almost a year's long investigation (see Exhibit K Attachment K-2).

42.     Cigna (LINA) abruptly cancelled the Plaintiff's STD income benefits without notice after the OCRC found "probable cause" and denied the Plaintiff her right to appeal.

43.     Between August 6, 2018 and September 2018, Cigna (LINA) intentionally delayed paperwork and phone calls, failed to notate the Plaintiff's STD account of her request for appeal and intentionally exhausted the Plaintiff's remainder of STD time.

44.     September 27, 2018, OCRC denied Honeywell's reconsideration request to reverse their decision and the "Probable" decision was affirmed. A public hearing was scheduled for June 20, 2019. (see Exhibit K Attachments K-5 & K-6).

45.     Exactly one week later after the OCRC's decision the Plaintiff's healthcare coverage was cancelled on October 4, 2018, Plaintiff did not owe past due medical billings.

46.     October 5, 2018 Plaintiff suffered a second miscarriage, the Plaintiff was unaware that her medical healthcare coverage was cancelled the day before October 4, 2018.

47. Plaintiff was denied her income benefits while on an approved medical leave between July 18, 2018 through November 12, 2018 in which she was eligible.

48. In August 2019 Honeywell and Cigna (LINA) manipulated their LTD provisions and policy's to unfairly lower her income benefits from $2,657 down to $100 per month, coincidentally the same time Plaintiff's deadline to file her Federal complaint.

49. September 25, 2019 Plaintiff filed a complaint against Cigna (LINA) with the Ohio Department of Insurance for the willful participation in FLMA interference and FLMA retaliation.

50. Honeywell defamed and slandered the Plaintiff's good name and damaged her outstanding reputation when they circulated untruth events to her co-workers and throughout the company which caused her embarrassment and humiliation.

51. Honeywell and Cigna (LINA) defamed the Plaintiff when they sent written documentation to third-party State Officials knowing the statements were untrue and misleading. Honeywell stated the Plaintiff articulated her discrimination allegations. These statements were misleading, harmful and untrue and caused unrepairable damage, embarrassment and humiliation to the Plaintiff's reputation with the company.

52. Shortly after filing her complaint with ODI, against Cigna (LINA), Honeywell wrongfully terminated the Plaintiff on October 3, 2019.

53. On October 8, 2019 ODI advised the Plaintiff to reapply for SSDI benefits. On October 10, 2019 the Plaintiff reapplied. She did not have to file the unfair appeal directed by Cigna (LINA).

54. October 16, 2019, Cigna removed the unfair offset from the Plaintiff's LTD benefits and issued backpay for benefits unfairly withheld.

## FIRST CAUSE OF ACTION
### Race Discrimination and Racial Harassment - Title VII and Ohio R.C. §4112.02

55.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

56.     Plaintiff, an African American female, was fully qualified for her positions at all times.

57.     As described above, Defendant treated Plaintiff less favorably than similarly situated white employees by subjecting her to heightened scrutiny, criticism, and investigation which created a racially hostile work environment for her.

58.     Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard for Plaintiff's rights.

59.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which she is entitled to judgement.

## SECOND CAUSE OF ACTION
### Age Discrimination - Title VII and Ohio § 4112.02 (A); § 4112.14 (A); § 4112.99

60.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

61.     Plaintiff, a female 43 years of age at time of incident, was fully qualified for her positions at all times.

62.     As described above, Defendant treated Plaintiff less favorably than similarly situated white employees by subjecting Plaintiff to different terms and conditions of employment, not allowed to transfer out from under Misty Sanderson's supervision, was stripped of her Installation Administer Specialist duties which reduced her opportunity for advancement; failure to promotion; and she was transferred to a less desirable job.

63.     Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard for Plaintiff's rights.

64.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which she is entitled to judgement.

### THIRD CAUSE OF ACTION
### Pregnancy Discrimination Title VII and Ohio R.C. §4112.5.05 (G)(5); § 4112.02 (A)

65.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

66.     Plaintiff, a female 43 years of age at time of incident, was fully qualified for her positions at all times.

67.     All employers covered by Title VII are covered by the PDA.

68.     The Pregnancy Discrimination Act (PDA) is an amendment to Title VII of the Civil Rights Act of 1964.  PDA makes it illegal for Employers to discriminate on the basis of "Pregnancy", Childbirth, or a "related medical condition" (including those related to miscarriage or termination of a pregnancy).

69.     The PDA prohibits employers from discriminating against pregnant employees making assumptions about their ability or willingness to work after they have children.

70.     Women affected by pregnancy or related conditions must be treated in the same manner as other applicants or employees who are similar in their ability or inability to work.

71.     Defendant denied the Plaintiff her employee STD benefits in which she was entitled.

72.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered the loss of income which created financial hardship, injury and damage for which she is entitled to judgement.

### FOURTH CAUSE OF ACTION
### Wage Discrimination O.R.C. § 4111.17

73.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

74.     Plaintiff, an African American female, was fully qualified for her positions at all times.

75.     Defendant violated the Equal Pay Act when it denied the Plaintiff opportunity for promotion when they promoted Misty Sanderson, former Installation Field Administration to the position of Supervisor, Installation Administration Team.

76.     The Plaintiff was most qualified and experienced for the Supervisor, Installation Administration position, at the time of Sanderson's promotion.

77.     As described above, Defendant treated Plaintiff less favorably than similarly situated white employees by unfairly compensating the Plaintiff for her employment based on her skill, effort, and level of responsibility she provided to the Installation department.

78.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which she is entitled to judgement.

### FIFTH CAUSE OF ACTION
### Pattern or Practice of Retaliatory Harassment O.R.C. § 4112.02

79.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

80.     Plaintiff, an African American female and participated in a protected activity.

81.     As described above, Defendant treated Plaintiff less favorably than similarly situated white employees by subjecting her to heightened scrutiny, criticism, and investigation which created a racially hostile work environment for her.

82.     Defendant subjected the Plaintiff to a hostile work environment, different terms and conditions for complaining of a protected class and activity.

83.     Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard for Plaintiff's rights.

84.     As discussed in the above Statement of Facts, Defendant, through its employees and agents, engaged in a pattern or practice of retaliatory harassment against Plaintiff.

85.     As a proximate result of Defendant's retaliation, Plaintiff has suffered damages for which she is entitled to all of the appropriate remedies available to her.

## SIXTH CAUSE OF ACTION
### Disparate-Treatment Discrimination O.R.C. § 4112.02

86.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

87.     Plaintiff, an African American female, participated in protected activity and complained of a protected class and a hostile work environment.

88.     As described above, Defendant treated Plaintiff less favorably than similarly situated white employees by subjecting her to heightened scrutiny, criticism, and investigation which created a racially hostile work environment for her.

89.     Defendant's conduct was intentional, willful, wanton, malicious, and in reckless disregard for Plaintiff's rights.

90.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which she is entitled to judgement.

## SEVENTH CAUSE OF ACTION
### Aiding and Abetting Discrimination in Violation of the Ohio Civil Rights Act O.R.C. § 4112.02(J)

91.     Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

92.     Defendant, through their employees and representatives, aided and abetted Defendant in engaging in a pattern-or-practice of racial and retaliatory harassment against Plaintiff.

93.     As a proximate result of Defendant's aiding and abetting retaliation, discrimination, and the denial of public accommodations, Plaintiff has suffered damages for which she is entitled to all of the appropriate remedies available to her.

## EIGHTH CAUSE OF ACTION
### Breach of an Implied Contract O.R.C. § 2305.07; § 2305.06

94.     Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

95.     The attached copies of Honeywell Intelligrated's policies on Equal Employment Opportunity Workplace Harassment (see Exhibit A Attachment A-1 & A-2)), Vacation for Non-Exempt employees, and Paid Sick Leave constitute an implied contract (see Exhibit N Attachment N-1 through N-3.

96.     Plaintiff can establish all the elements for a breach of an implied contract of employment claim because: (1) she had an implied contract of employment; (2) she performed her obligations under this contract; (3) Honeywell Intelligrated materially breached the contract; and (4) Plaintiff has suffered damages.

97.     As a result of Defendant's breach of Plaintiff's implied contract of employment, Plaintiff has suffered and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

## NINETH CAUSE OF ACTION
### Promissory Estoppel

98.     Plaintiff realleges the preceding paragraphs as if fully rewritten herein

99.     Defendant promised the Plaintiff' a safe working environment and free from discrimination and retaliation.

100.    Defendant promised if she went through proper channels or reported the unethical behavior to the Global Integrity Helpline, she would be free from retaliation and harassment.

101.    Defendant broke their promise when they failed to protect the Plaintiff from a hostile work environment, failed to promptly investigate her workplace harassment complaint in an appropriate manner and failed to protect the Plaintiff from retaliation.

102.    As described above, Defendant broke their promise to the Plaintiff which she relied on and suffered harm when she was subjected to retaliation by Honeywell employees and representatives.

103.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which she is entitled relief.

## TENTH CAUSE OF ACTION
### Wrongful Discharge in Violation of Public Policy § 4112.99

104.    Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

105.    Plaintiff, an African American female and participated in a protected activity, was fully qualified for her positions at all times.

106.    Defendant wrongfully terminated the employment of Plaintiff on October 3, 2019.

107.    As described above, Defendant treated Plaintiff less favorably than similarly situated white employees by subjecting her to heightened scrutiny, criticism, and investigation which created a racially hostile work environment for her.

108.    Defendant, through their employees and representatives, engaged in a pattern and practice of retaliation that ultimately resulted in in the termination of the Plaintiff.

109.    Defendant's actions were willful, malicious, and/or in reckless disregard of Plaintiff's rights.

110.    As a result of Defendant's retaliatory and discriminatory misconduct, Plaintiff has suffered injury and damage for which she is entitled relief.

## ELEVENTH CAUSE OF ACTION
### Misrepresentation and Fraud

111.    Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

112.    In its policies on Equal Opportunity and Workplace Harassment, Defendant made representation to all employees, including Plaintiff that the Company would protect them against discrimination, harassment, and retaliation.

113.    Defendant's representations were falsely made, with either knowledge of their falsity, or with disregard as to whether they were true or false.

114.    Defendant, through their employees and representatives, has committed the tort of intentional misrepresentation under Ohio law.

115.    Defendant, though their employees and representatives, has also committed the tort of fraud under Ohio law.

116.    As a result of Defendant's misrepresentation and fraud, Plaintiff has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

## TWELETH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

117.    Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

118.    As discussed in the above Statement of Facts, Honeywell Intelligrated, employees and representatives engaged in extreme and outrageous conduct towards her and that their conduct caused her to suffer severe emotional distress which caused her to suffer two miscarriages.

119.    As a result of the Defendant's intentional infliction of emotional distress, Plaintiff has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

## THIRTEENTH CAUSE OF ACTION
### FLMA Interference and FMLA Retaliation 29 U.S.C. § 2615(a)(1); 29 U.S.C. § 2615(a)(2)

120.    Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

121.    Plaintiff was eligible and on an approved FLMA leave and suffered FLMA Interference when Defendant, though its Employees and Healthcare Administrators unfairly denied the Plaintiff her requested extension for her Short-Term Disability ("STD") income benefits while under her Pregnancy related condition, an approved condition under the Defendant's Family Plan administered by Cigna (LINA), and before her FLMA exhausted.

122.    Plaintiff was eligible and on an approved FLMA leave between and suffered FLMA Retaliation because she participated in a protected activity, the OCRC's investigation. Defendant denied the Plaintiff her requested extension for her Short-Term Disability ("STD") income benefits while on an approved FLMA leave for her Pregnancy related condition and before her FLMA exhausted.

123.    As a proximate result of the Defendant's FLMA interference and FMLA retaliation against Plaintiff, she has suffered damages for which she is entitled to all of the appropriate remedies available to her.

## FOURTEENTH CAUSE OF ACTION
### Defamation: Slander and Libel O.R.C § 2739.01

124.    Plaintiff realleges the preceding paragraphs as if fully rewritten herein.

125.    Statements made by Defendant officials/representative contained false and misleading information about the Plaintiff and was presented to OCRC Commissions in both administrative hearing and reconsideration hearing in which OCRC found probable cause of race, age and retaliation.

126.    Statements made by Cigna (LINA), Defendant's Healthcare Administrator to Ohio Department of Insurance ("ODI") contained false and misleading information about the Plaintiff.

127.    Defendant defamed and ruined her "Outstanding" rating and reputation by falsifying performance improvement plans (PIP) and distributed misleading written documentation which told untruth stories about the Plaintiff's work performance and character and denied her a fair investigation regarding her complaints of a hostile work environment and discrimination,

128.    Defendant's actions were willful, malicious, and/or in reckless disregard of Plaintiff's rights.

129.    As a result of Defendant's defamation through libel and slander, Plaintiff has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, Honeywell Intelligrated as follows:

a)    That Defendant pay Plaintiff any and all back pay, front pay and lost benefits she has suffered for their unlawful discriminatory and retaliatory acts.

b)    That Defendant be required to pay all medical bills, fees and related expenses resulting from Plaintiff's miscarriages and mental health illness due to their unlawful acts.

c)    That Defendant be required to pay any future medical bills resulting from their unlawful acts of terminating the Plaintiff's Family Medical Coverage.

d)    That Defendant be responsible to reimburse the Plaintiff of all medical bills she paid out of pocket as the result of Honeywell's discriminatory actions against the Plaintiff.

e)      That Defendant agrees not to engage in or allow conduct that might be construed as retaliatory or hostile against the Plaintiff.

f)      That Plaintiff be awarded compensatory damages from the Defendant in an amount to be determined at trial but in no event less than $350,000.

g)      That Plaintiff be awarded punitive damages in an amount sufficient to deter the Defendant from engaging in similar retaliatory, discriminatory, and harassing conduct in the future but in no event less than $700,000.

h)      That Plaintiff be awarded both pre-judgment interest and post-judgment interest.

i)      That Plaintiff be awarded reasonable attorney's fees and costs from the Defendant.

j)      That Defendant be ordered to pay all court fees and costs for Plaintiff.

k)      That Plaintiff be awarded all other legal and equitable relief to which Plaintiff may be entitled from the Defendant.


DATE: November 18, 2019


## JURY DEMAND


Plaintiff demands a trial by jury


Malissa R Harmon
1512 N Breiel Blvd.
Middletown Ohio 45042
(513) 499-7093

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2019 a copy of the foregoing "Second Amended Complaint" was filed with the Clerk of Court. Notice of this filing was mailed to Defendant's counsel by regular mail and may access this filing through the Court's system.

**Monica L. Lacks, Esq.**

**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**

**Key Tower**

**127 Pubic Square, Suite 4100**

**Cleveland, Ohio 44114**

Monica.lacks@ogletree.com

**Attorney for Defendant Intelligrated, Inc.**

Malissa R. Harmon_____

Plaintiff *pro se.*