# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MALISSA R. HARMON,
      Plaintiff,

Case No. 1:19-cv-670
Cole, J.
Litkovitz, M.J.

      vs.

HONEYWELL INTELLIGRATED,
      Defendant.

**ORDER AND REPORT AND
RECOMMENDATION**

Plaintiff Malissa Harmon brings this employment discrimination action against defendant Honeywell Intelligrated ("Honeywell") alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C § 623 *et seq*., the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), the Family Medical Leave Act ("FMLA), 29 U.S.C. § 2601 *et seq.*, and claims under state law. (Doc. 19). This matter is before the Court on defendant's partial motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 24), plaintiff's response in opposition (Doc. 26), and defendant's reply memorandum (Doc. 28). This matter is also before the Court on defendant's motion for a telephonic conference. (Doc. 13).

## I. Facts

Plaintiff makes the following allegations in the second amended complaint. Plaintiff is African American and was age 41 to 45 during the relevant time periods in this case. (Doc. 19 at ¶ 10). She was hired by Intelligrated on September 27, 2010, which operated as an independent company until 2016 when it was purchased by Honeywell and integrated into Honeywell's business operations. (*Id.* at ¶¶ 5,8). Honeywell is a "leading North-American-based, single-source provider of automated material handling solutions and intelligent design software." (*Id.* at ¶ 2). Until her termination, plaintiff was employed without incident. (*Id.* at ¶ 8). While

working for Honeywell, plaintiff was promoted twice and received "Outstanding Ratings" in 2015, 2016, and 2017, which were the highest possible employee ratings. (*Id.* at ¶ 8).

In March 2015, plaintiff was promoted to Installation Administration Specialist, which was a newly created position. (*Id.* at ¶ 12). In this position, plaintiff was responsible for ensuring that the company adhered to purchasing policies and processes and for administering subcontractor and vendor requisitions and invoicing for her department. (*Id.* at ¶ 13). Plaintiff's immediate superior was Cindy Levitz, the Installation Administration Supervisor. (*Id.* at ¶ 12). Shortly following her promotion, plaintiff reported her suspicions of "unethical purchasing activity" from within her department to Nick Choi, the Vice President of Installations. Plaintiff also complained to Choi that she felt segregated from and mistreated by members of the department. (*Id.* at ¶ 14). In June 2015, plaintiff was ridiculed by David Clarke, the Mechanical Manager for Installation, for making these reports to Choi. Clarke used profanity and told plaintiff "don't go rocking the boat" and "you're dealing with the good old boys." (*Id.* at ¶ 15). Plaintiff informed Choi of this interaction. (*Id.*). The alleged hostile work environment continued to worsen, causing plaintiff to again complain to Choi that Levitz and Clarke were both interfering with her work and that Levitz was not training plaintiff as instructed. (*Id.* at ¶ 16).

Plaintiff went on maternity leave from August 2015 to October 2015, during which time Levitz was terminated. (*Id.*). Upon her return from maternity leave, Manager Ryan Balzer instructed plaintiff to train Misty Sanderson, acting Installation Administration Supervisor, who is white, on the tasks that Levitz and plaintiff had been performing in the office in the six months prior to plaintiff's maternity leave. (*Id.* at ¶¶ 16-17). Although plaintiff trained Sanderson and Sanderson had to seek authorizations from plaintiff to complete her tasks, Sanderson was

2

promoted to the Supervisor position and filled Levitz's role. (*Id.*). Both Sanderson and her husband, Brett Sanderson, were promoted despite Honeywell never posting the positions. (*Id.*). Per company policy, plaintiff continued to question the approving of "questionable vendor related invoices and vendor payroll activity submitted from management" that she was responsible for verifying and approving. (*Id.* at ¶ 18). Plaintiff alleges that the hostility and retaliation "intensified" when she questioned Brett Sanderson's vendor-related purchase orders and expenses. (*Id.*).

In October 2016, plaintiff reached out to Jennifer Phelps, a Human Resources Generalist, to complain about the alleged unethical activity and Misty Sanderson's harassment and mismanagement, and the lack of an internal resolution. (*Id.* at ¶ 19). Following plaintiff's complaint to HR, plaintiff alleges that the hostile work environment increased. (*Id.* at ¶ 20). Plaintiff alleges that Sanderson raised her voice at plaintiff, got close in plaintiff's face, and took administrative responsibilities from plaintiff and gave them to younger, white employees who had been trained by plaintiff. During this time, plaintiff alleges that other younger, white employees, were given promotions and opportunities to work from home that were denied to plaintiff. (*Id.*; Ex. K-2, PageID 863).[1] Plaintiff alleges that in June 2017, Lucy Gomez, a non-white employee, resigned as a result of being subjected to the same unfair treatment that plaintiff had been subjected to by Sanderson and Balzer. (Doc. 19 at ¶ 21) (citing Ex. H-1 through H-3);

---

[1] Plaintiff attaches documents from the OCRC to her second amended complaint, including her charge of discrimination and the OCRC's letter of determination. In ruling on a motion to dismiss, the Court can consider "exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). *See also Mediacom Southeast LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). Documents filed with the EEOC or OCRC are matters of public record that may be considered on a motion to dismiss. *Caplinger v. Uranium Disposition Servs., LLC*, No. 2:08-cv-548, 2009 WL 367407, at *2 (S.D. Ohio Feb. 11, 2009). *See also Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862-63 (N.D. Ohio 2013). Therefore, this opinion will consider these documents in ruling on the motion to dismiss.

Ex. K-2, PageID 863). Plaintiff also alleges that Honeywell officials, including Marillia Vidal-Clarisey, an HR Generalist; Bernie Hess, the Vice President of HR; Nick Choi; and David Schweltzer, all had knowledge about allegations against Sanderson and Balzer but failed to act. (Doc. 19 at ¶ 22).

On July 28, 2017, plaintiff spoke with HR a second time. (*Id.* at ¶ 23). Plaintiff informed Vidal-Clarisey that she wanted to file a workplace harassment and discrimination complaint against Sanderson and Balzer. (*Id.*). She also informed Vidal-Clarisey that she was being asked to perform unethical activities and blindly approve department invoices, timesheets, and improperly verified expenses. (*Id.*). Originally, Vidal-Clarisey advised plaintiff to report her complaints to the Global Integrity Helpline. (*Id.* at ¶ 24). Vidal-Clarisey later contacted plaintiff after work hours on behalf of Hess to advise plaintiff not to report her complaint to the Global Integrity Helpline. (*Id.*). Plaintiff was informed that HR would only get involved if the resolution of the issue needed to be expedited. (*Id.*). Regardless, plaintiff contacted the Global Integrity Helpline pursuant to Honeywell's Code of Conduct and Work Harassment Policy. (*Id.* at ¶ 25). The Global Integrity Helpline responded that "not enough evidence was given to investigate" plaintiff's report. (*Id.* at ¶ 26).

On August 21, 2017, Balzer and Sanderson attempted to place plaintiff on a Performance Improvement Plan ("PIP") less than one month after she received her 2017 "Outstanding Ratings" award from the company. (*Id.* at ¶ 27; Ex. K-2, PageID 864). Two days later, on August 23, 2017, plaintiff requested that HR intervene for a third time to resolve the hostile work environment and what plaintiff felt were retaliatory actions from Balzer and Sanderson. (Doc. 19 at ¶ 28). Plaintiff continued to advise management and HR of alleged unethical billing and purchasing practices within her department. (*Id.* at ¶ 29).

4

On September 27, 2017, plaintiff filed a charge of discrimination with the OCRC against Honeywell for race and age discrimination, as well as retaliation. (*Id.* at ¶ 30). Plaintiff's charge of discrimination alleges the following:

I.  I am African American forty three (43) years of age. I complained about protective activities and was retaliated against. I have been employed with Respondent since September 27, 2010, most recently as a Senior Installation Administration (Admin.). As of September 29, 2017, Respondent continues to subject me to a hostile work environment, different terms and Conditions, diluted my tasks that resulted in the loss of earnings due to not being able to work overtime, denied me opportunities to transfer and thwarted me from receiving promotions because of my race, age and retaliation.

II.  On September 29, 2017, Mr. Ryan Balzer, Caucasian Operation Manager for Installation, for the second time, requested that I sign an unwarranted Performance Improvement Plan. I refused again. He stated that I had been warned. Respondent started diluting my tasks and became more flagrant in subjecting me to a hostile work environment after I filed a charge about my protected classes.

III.  I believe that I have been unlawfully discriminated against by Respondent because of my age, race, retaliation and a hostile work environment:

A.  I had been employed with Respondent without incident. On two different occasions, in the past, Respondent rewarded my performance by promotions with an increase in salary. Each supervisor evaluated me as Outstanding.

B.  Due to growth in the Installation department Respondent create[d] a new position. They posted the new position of an Installation Administration Coordinator, which I applied for and transferred to in March 2015. I was informed that I would be mirroring Ms. Cindy Levitz, Caucasian Installation Administration Supervisor, to be her backup. I had informed Mr. Balzer and Mr. Nick Choi, Asian Vice President, that Ms. Levitz was not training me as instructed. Ms. Levitz's employment was terminated during my August 2015 to October 2015 pregnancy leave. Upon my returned [sic] Respondent had Ms. Misty Sanderson, Caucasian, was [sic] the acting Installation Administration Supervisor.

C.  Mr. Balzer had Ms. Sanderson train me for the tasks she had been performing in the field, which required her to seek authorizations from me to assist her with tasks in the field. He had me train Ms. Sanderson on the tasks that Ms. Levitz and I had been performing in the office. Respondent eventually promoted Ms. Sanderson to the Supervisor's position and promoted her husband, who is Caucasian, without posting the positions.

D. I have documented from October 2015 to the present to identify how I was subjected to a hostile work environment mostly created by Ms. Sanderson and Mr. Balzer, upon her and her husband's promotions. The hostility came because I would question, per policy, the approving of her husband's and others' documents submitted to me for approval. Also I have documentation to Management requesting these issues and her conduct be resolved. My concerns have not been addressed by Respondent nor by Honeywell who purchased Respondent in August 2016 and I had requested Honeywell to investigate my concerns, as well.

E. I had involved Human Resources as Ms. Sanderson's efforts to create a hostile work environment continued. She would raise her voice at me, got close in my face, she took Admin's responsibilities from me and gave them to the younger Caucasian Admins, as I trained them. Respondent allowed Ms. Amanda Hale, Caucasian, to work from home due to being sick, Respondent denied me the same opportunity. Respondent assigned part of my tasks to Ms. Maria Floyd, Caucasian, who is allowed to work from home daily. After I filed a charge concerning my protected classes in September 2017, Respondent moved me to the Accounting Dept. on two different occasions and permanently in December 2017. Each move Respondent distributed my Installation Administrative tasks to the younger Caucasians and to Caucasian family and friends, as I trained them. Respondent has diluted my tasks to virtually no tasks. Another minority employee resigned and stated it was because she was subjected to the same unfair treatment that I am being subjected to by Ms. Sanderson and Mr. Blazer [sic]. Also another minority employee, as well as myself, was not allowed to transfer to another position while Caucasian employees were allowed to transfer from Ms. Sanderson.

(Doc. 19-3, PAGEID #856).

Plaintiff alleges that her work environment became even more hostile after she filed her charge of discrimination. (Doc. 19 at ¶ 30). Plaintiff was moved to the Accounting Department on two different occasions and permanently in December 2017, and her tasks were given to younger, white employees. (*Id.* at ¶ 31). Plaintiff's duties were then limited to filing paperwork and picking up and delivering mail. (*Id.* at ¶ 36; Ex. K-2, PageID 864). On September 29, 2017, for the second time, Balzer "tried to coerce" plaintiff into signing an "unwarranted" PIP, which she refused to sign. (*Id.* at ¶ 32). Following her refusal to sign the second PIP, plaintiff alleges that the retaliation continued when Balzer and Sanderson sent her multiple emails that accused

her of "going outside their direction." (*Id* at ¶ 33). Balzer denied plaintiff the use of her earned vacation hours, which resulted in a loss of pay. (*Id.*). Balzer also told plaintiff she "cannot talk to anyone and to stop involving management and contacting HR," which left plaintiff feeling segregated from her co-workers. (*Id.*).

In October 2017, the OCRC notified Honeywell of plaintiff's charge of discrimination. (*Id.* at ¶ 34). Vidal-Clarisey and Hess conducted an internal Honeywell investigation and revealed to plaintiff at a December 12, 2017 meeting that they found "no evidence of a hostile work environment or retaliation." (*Id.* at ¶ 35). The investigation concluded that Sanderson had "a good working relationship with her team" but did not address plaintiff's reports against Balzer. (*Id.*). After the December 12, 2017 meeting, plaintiff's administrative duties were completely stripped from her. (*Id.* at ¶ 36). Honeywell told the OCRC that plaintiff would return to her normal duties, but plaintiff remained in the Accounting Department with no mention of change in duties at any time prior to her FMLA leave. (*Id.*). On February 14, 2018, plaintiff took an approved FMLA leave after suffering her first miscarriage and having a mental breakdown. (*Id.* at ¶ 37). On April 19, 2018, before her FMLA leave was exhausted, plaintiff requested an extension of her short-term disability (STD) income benefits through Honeywell's Healthcare Administrator, Cigna (LINA), which denied her an extension. (*Id.* at ¶¶ 38-39).

On July 26, 2018, after its yearlong independent investigation, the OCRC found probable cause of race and age discrimination and retaliation and probable cause that plaintiff was subjected to a hostile work environment. (*Id.* at ¶ 41; *See generally* Ex. K-2, PAGEID# 857-868). Following the OCRC's finding of probable cause, plaintiff alleges that Cigna (LINA) abruptly cancelled her STD benefits without notice and denied her right to appeal. (*Id.* at ¶ 42). Between August 6, 2018 and September 2018, plaintiff alleges that Cigna (LINA) delayed

paperwork and phone calls and failed to note plaintiff's request for an appeal in her STD account.  (*Id.* at ¶ 43).

On September 27, 2018, the OCRC denied Honeywell's reconsideration request and affirmed their probable cause decision in the discrimination and retaliation investigation.  (*Id.* at ¶ 44).  The OCRC scheduled a public hearing for June 2019.  (*Id.*; Ex. K-5, Doc. 19-3).[2]  One week later, on October 4, 2018, plaintiff's healthcare coverage was cancelled.  (Doc. 19 at ¶ 45).  The next day, plaintiff suffered a second miscarriage, unaware that her healthcare coverage had been cancelled the day before.  (*Id.* at ¶ 46).  Plaintiff alleges that she was denied income benefits while on an approved medical leave between July 18, 2018 through November 12, 2018.  (*Id.* at ¶ 47).  In August 2019, plaintiff's Long-Term Disability (LTD) provisions and policies were changed, which resulted in her income benefits being lowered from $2,657 to $100 per month.  (*Id.* at ¶ 48).  On September 25, 2019, plaintiff filed a complaint against Cigna (LINA) with the Ohio Department of Insurance (ODI) for "willful participation in FLMA [sic] interference and FLMA [sic] retaliation."  (*Id.* at ¶ 49).  On October 3, 2019, plaintiff was terminated.  (*Id.* at ¶ 52).  On October 16, 2019, Cigna (LINA) removed the offset from plaintiff's LTD benefits and issued backpay for the withheld benefits.  (*Id.* at ¶ 54).

## II.  Rule 12(b)(6) Standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party.  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).  Only "a short and plain statement of the claim showing that the pleader is

---

[2] The public hearing was eventually cancelled as the parties entered into a Conciliatory Agreement and Consent Order on February 13, 2019.  Plaintiff withdrew her charge of discrimination from the OCRC on March 12, 2019 to pursue her claims in federal court.  (Ex. K-7, Doc. 19-3 at PAGEID# 878-882).

entitled to relief" is required.  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he statement need only give the defendant fair notice of what the . . .  claim is and the grounds upon which it rests."  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 555, 570).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  It is well-settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" in determining whether they fail to state a claim.  *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  *See also Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).  However, the Sixth Circuit has recognized that the Supreme Court's liberal construction case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## III.  Resolution

Defendant moves to dismiss the following counts of plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6):  Count 1 (to the extent it alleges a racially hostile work environment), Counts 2-4, and Counts 6-14.

### A. Count I: Racial Harassment under Title VII and Ohio Rev. Code § 4112.02(A)

Defendant moves dismiss Count I of plaintiff's second amended complaint to the extent it alleges racial harassment.[3]  Defendant argues that plaintiff fails to allege that a hostile environment occurred because of her race and fails to allege a hostile environment that was sufficiently severe or pervasive.  (Doc. 24 at 10).

Title VII of the Civil Rights Acts of 1964 makes it unlawful for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race.  42 U.S.C. § 2000e-2(a).  Title VII protects employees from discriminatory hostile or abusive work environments.  *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).  The Ohio Civil Rights Act, Ohio Rev. Code § 4112.02, similarly protects employees from racial harassment in the workplace.  *Woods v. FacilitySource, LLC*, 640 F. App'x 478, 483 (6th Cir. 2016).  Claims for hostile work environment brought under Ohio Rev. Code § 4112.02(A) are analyzed using the same standard as claims brought under Title VII.  *Birch v. Cuyahoga Cty. Prob. Court*, 392 F.3d 151, 163 (6th Cir. 2004).

To prove a racially hostile work environment under Title VII, a plaintiff must show that "(1) she was a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable."  *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).  In terms of the fourth factor,

---

[3] Defendant concedes that plaintiff's allegations of racial discrimination "minimally satisfy the plausibility requirement[.]"  (Doc. 24 at 9).

employees are protected from a "workplace [] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. . . ." *Harris*, 510 at 21 (internal quotation marks omitted).  The conduct must be severe or pervasive enough to "create an objectively hostile or abusive working environment—an environment that a reasonable person would find hostile or abusive." *Barrett*, 556 F.3d at 502 (quoting *Harris*, 510 U.S. at 21-22). The victim must also "subjectively perceive the environment to be abusive," otherwise the conduct would not have altered the conditions of the victim's employment. *Id.* at 502.

At the pleading stage, however, a plaintiff who asserts a federal employment discrimination claim is not required to plead facts establishing a prima facie case under Title VII in order to state a claim for relief. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)).  "The prima facie case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510.  A plaintiff "need allege only (a) the statutory basis for [the] claims, and (b) the factual predicate of those claims, such that the defendants are 'apprise[d] . . . of the [] claims and the grounds upon which they rest.'" *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 871 (S.D. Ohio 2013) (quoting *Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007)).  While plaintiff's complaint need not present detailed factual allegations, "it must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference" that defendant discriminated against her because of her race. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678, 679).

Accepting the allegations of the second amended complaint and the documents from the OCRC investigation as true, the Court concludes that plaintiff has stated a plausible claim for

11

relief under Title VII and Ohio law for a racially hostile work environment. Contrary to defendant's assertion, plaintiff has sufficiently alleged that any "harassment" was based on her race. Defendant argues that plaintiff does not point to a "single comment, slur, joke, or other statement concerning plaintiff's race." (Doc. 24 at 10). Defendant is correct that plaintiff's second amended complaint is devoid of race-specific or derogatory terms; however, in the Sixth Circuit, a plaintiff may also prove harassment by "comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." *Bradley v. Arwood*, 705 F. App'x 411, 417-18 (6th Cir. 2017) (quoting *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011)). Plaintiff need not allege that she was the target of slurs, comments, or jokes based on her race, but rather may allege facts that show that "the challenged actions 'would not have occurred *but for* the fact that the plaintiff was African American.'" *Bradley*, 705 F. App'x at 418 (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999) (citation omitted)). "An example of the latter approach could include evidence that similarly situated individuals of a different race were not subject to harassment." *Id.* (quoting *Pusey v. United Parcel Service, Inc.*, 393 F. App'x 366, 369 (6th Cir. 2010)) (in turn citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706-07 (6th Cir. 2007)). "Conduct that is not explicitly race-based may be illegally race-based and properly considered in a hostile-work-environment analysis when it can be shown that but for the employee's race, she would not have been the object of harassment." *Rawls v. Garden City Hosp*., No. 09-13924, 2012 WL 762616, at *6 (E.D. Mich. Feb. 16, 2012) (citing *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002), *abrogated on other gds. by White v. Columbus Metro. Housing Auth*., 429 F.3d 232, 240-41 (6th Cir. 2005)) (Report and Recommendation), *adopted*, 2012 WL 762612 (E.D. Mich. Mar. 9, 2012). Here, plaintiff alleges comparative facts suggesting she and other non-white employees,

12

including Lucy Gomez and Jessica Holland, were treated differently than similarly situated white employees in that they were subjected to unwarranted performance plans, were denied promotions, and were denied the right to transfer departments and work from home.  (Doc. 19 at ¶ 21; Doc. 19-3 at PAGEID# 856, 862).

In addition, plaintiff has pleaded sufficient facts for the Court to reasonably infer that defendant's conduct was severe or pervasive enough to create a racially hostile or abusive work environment.  In determining whether a work environment is objectively hostile or abusive, courts consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 23). Conduct must be extreme to satisfy the evidentiary requirements for a hostile work environment; however, a "work environment viewed as a whole may satisfy the legal definition of an abusive work environment . . . even though no single episode crosses the Title VII threshold." *Williams v. General Motors*, 187 F.3d 553, 568 (6th Cir. 1999).  While some of plaintiff's allegations alone may not be enough to constitute a severe or pervasive work environment, the totality of the circumstances must be considered.  *Id.* at 562.  Here, plaintiff alleges a series of actions which, taken together, compromise a "work-sabotaging behavior," to plausibly suggest a hostile work environment.  Specifically, plaintiff alleges that she was forced to train Sanderson on supervisory tasks; Sanderson raised her voice at plaintiff, "got close" in her face, and gave her administrative responsibilities to younger, white employees after plaintiff reported the questionable vendor-related invoices; she was placed on a PIP one month after receiving an outstanding review and after reaching out to HR to file a hostile work environment and discrimination complaint; she

13

was placed on a second PIP two months after reaching out to HR again; she was denied the use of unearned vacation hours; she was segregated from her co-workers and told she "cannot talk to anyone"; and she was transferred to the Accounting Department permanently in December 2017 where she was stripped of her duties as an Installation Administrator Specialist and assigned to filing paperwork and delivering the mail.  (Doc. 19 at ¶¶ 17, 20, 27, 31, 32, 33, 36; Doc. 19-3 at PAGEID# 863-64).  Taken together, these circumstances create a facially plausible claim for racial harassment.  *See Bradley*, 705 F. App'x at 411 (holding that evidence of race-based harassment, including different treatment of non-white employees compared to white employees, emails, daily interactions and other communications, barriers to plaintiff's use of leave, and unfounded negative reviews constituted a "succession of harassing acts," which as a whole were severe and pervasive enough support a hostile work environment claim).

Overall, construing the allegations in the second amended complaint and attachments in plaintiff's favor, plaintiff has stated plausible claims for racial harassment under Title VII and state law and these claims should not be dismissed at this juncture for failure to state a claim for relief.  Defendant's motion to dismiss plaintiff's Count One racial harassment claim should be denied.

### B.  Count II: Age Discrimination under Federal and State Law

Defendant moves to dismiss plaintiff's age discrimination claims, arguing that both claims under the ADEA and state law are insufficiently pled.  (Doc. 24 at 11-12).  Defendant contends that plaintiff's second amended complaint contains no allegations that younger employees were treated more favorably than plaintiff.  (*Id.* at 12).  Defendant further contends that plaintiff's state law age discrimination claim brought under Ohio Rev. Code § 4112.02 is time-barred.  (*Id.*).

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C § 623(a)(1).  To prove her prima facie case of age discrimination under the ADEA, plaintiff must establish that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was treated differently than similarly-situated individuals.  *House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 464 (6th Cir. 2015).  Age discrimination claims brought under Ohio law are analyzed under the same standards as claims brought under the ADEA.  *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012).  *See also Moffat v. Wal-Mart Stores, Inc.*, 624 F. App'x 341, 345 (6th Cir. 2015).  Moreover, Ohio law "provides several distinct avenues for challenging age discrimination," including Ohio Rev. Code §§ 4112.02, 4112.14, and 4112.99.[4]  *Conrad v. U.S. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 787 (S.D. Ohio 2019).   While a plaintiff may initially plead age discrimination under all three provisions, she must "elect [her] sole remedy when an employer files a motion to dismiss."  *Id.* at 788-89 (quoting *Wood v. Summit Cty. Fiscal Office*,

---

[4] Ohio Rev. Code § 4112.02(A) "is a general anti-discrimination statute that provides a private cause of action for age discrimination."  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 513 (6th Cir. 2001).  It provides:

It shall be an unlawful discriminatory practice:
> (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, *age*, or ancestry of any person, to discharge without cause,  to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code § 4112.14 "is addressed solely to age discrimination and allows an aggrieved employee to institute a civil action.  *Ziegler*, 249 F.3d at 513-14.  It provides:
> (A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

Ohio Rev. Code § 4112.99 is a "general anti-discrimination statute that permits a private cause of action for age discrimination."  *Ziegler*, 249 F.3d at 514 (citing *Elek v. Huntington Nat'l Bank*, 573 N.E.2d 1056, 1057 (Ohio 1991)).

377 F. App'x 512, 514 (6th Cir. 2010) (internal quotation omitted)).  "In other words, a plaintiff

can postpone deciding which provision to rely upon until faced with a motion to dismiss, but

cannot, after that juncture, continue to plead multiple bases and 'ask the court to sort it out.'"  *Id.*

at 789.

In this case, plaintiff has alleged sufficient facts to state a plausible claim of age

discrimination under the ADEA.  Defendant appears to concede that plaintiff is a member of a

protected class, suffered from an adverse employment action, and was qualified for her position,

and instead argues that plaintiff has failed to allege that she was "replaced by a younger, less

qualified employee, or that younger employees were treated more favorably."  (Doc. 24 at 12).

The Court disagrees.  The second amended complaint, combined with the documents from the

OCRC investigation, includes allegations that similarly situated, younger co-workers were

treated more favorably than plaintiff.  For example, plaintiff alleges that Amanda Hale, age 25,

and Maria Floyd, age 31, were both allowed to work from home while plaintiff was denied the

same opportunity.  (Doc. 19 at ¶¶ 20, 62; Ex. K-2, PageID 863).  In addition, plaintiff alleges that

Sanderson took away plaintiff's administrative responsibilities and gave these tasks to younger

employees, which eventually resulted in plaintiff being moved to the Accounting Department

and stripped of all Installation Department administrative duties in January 2018.  (Doc. 19 at ¶¶

20, 31, 36).  Unlike the cases cited by defendant, plaintiff here identifies specific younger

employees who were treated more favorably and specific instances where these employees were

treated more favorably.  (Doc. 24 at 11-12) (citing *Micca v. Compass Grp. USA, Inc*., No. 3:14-

cv-693, 2015 WL 3407348, at *4 (W.D. Ky. May 26, 2015); *House v. Rexam Beverage Can Co*.,

630 F. App'x 461, 463 (6th Cir. 2015); *Bush v. Lumileds LLC*, No. CV 16-11761, 2017 WL

993005, at *3 (E.D. Mich. Feb. 9, 2017) (Report and Recommendation), *adopted*, 2017 WL

1173774 (E.D. Mich. Mar. 30, 2017)).  The facts alleged by plaintiff create a plausible inference that plaintiff was treated less favorably than similarly situated younger individuals, which is sufficient to state a claim under the ADEA.

While plaintiff has alleged sufficient facts to state a claim for age discrimination under the ADEA, the Court agrees with defendant that plaintiff's state law age discrimination claim is time-barred under the statute of limitations listed in Ohio Rev. Code § 4112.02(L).  As stated above, although plaintiff has permissibly pled state law claims under Ohio Rev. Code §§ 4112.02, 4112.14, and 4112.99 (Doc. 19 at ¶¶ 60-64), in responding to defendant's motion to dismiss, she must "elect" which Ohio statutory provision upon which she relies.  *Conrad*, 391 F. Supp. 3d at 788.  Moreover, § 4112.99 is a general "gap-filling" age discrimination provision that is subject to the substantive provisions of § 4112.02 or § 4112.14.  *Id.* (citing *Meyer v. United Parcel Serv., Inc.*, 909 N.E.2d 106, 113 (Ohio 2009)).  In her response in opposition to defendant's motion to dismiss, however, the only statutory provision that plaintiff mentions is "Ohio Revised Code Chapter 4112."  (Doc. 26 at 5).  If an aggrieved employee either fails to elect her remedy by amending the complaint or by engaging in a "de facto" election of remedy by simply defending on one section of the statute, then "the trial court must exercise its discretion, determine under which section of the statute the aggrieved employee has defended the motion to dismiss, decide the motion on the merits, and dismiss with prejudice the remaining age discrimination claims that were simultaneously pled."  *Raub v. Garwood*, No. 22210, 2005 WL 662932, at *3 (Ohio Ct. App. Mar. 23, 2005).  This leaves the Court to exercise its discretion in determining whether plaintiff seeks to bring her state law age discrimination claim under Ohio Rev. Code § 4112.02, § 4112.14, or § 4112.99 premised upon a § 4112.02 or § 4112.14 violation.

Here, plaintiff does not allege that she was fired as a result of her age, which eliminates any cause of action brought under § 4112.14. Plaintiff's claims are based on allegations that younger employees were treated more favorably and that plaintiff's administrative duties in the Installation Department were stripped from her and given to younger employees. Section 4112.14 solely provides a cause of action for age discrimination for employees who are discriminated against in job openings or who are discharged without just cause. *See* Ohio Rev. Code § 4112.14(A) ("No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older. . . ."). In the absence of any allegations that plaintiff was discharged based on her age, the Court presumes that plaintiff brings her age discrimination claim under § 4112.02 or § 4112.99 premised upon a § 4112.02 violation, which provides a more general cause of action for age discrimination with "respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). Claims brought under § 4112.02 are bound by the 180-day statute of limitations outlined in Ohio Rev. Code § 4112.02(L).[5] Here, plaintiff's state law age discrimination claim is time-barred because she failed to bring her claim within 180 days after the alleged unlawful discriminatory practice. Plaintiff alleges that she was discriminated against based on her age when she was subjected to different terms and conditions of employment, not allowed to transfer from Misty Sanderson's supervision, stripped of her administrative duties, and transferred to a less desirable job. (Doc. 19 at ¶ 62). Based on these facts, the alleged unlawful employment practice culminated when she was transferred to the Accounting Department permanently in December 2017. (*Id.* at ¶ 31). Plaintiff did not file this

---

[5] Claims brought under Ohio Rev. Code § 4112.14 have a longer, six-year statute of limitations. *Conrad*, 391 F. Supp. 3d at 788.

action until August 2019—well after the 180-day statute of limitations expired.[6]  Therefore, plaintiff's state law age discrimination claim should be dismissed as time-barred.

For the reasons stated above, plaintiff's state law age discrimination claim should be dismissed as time-barred by the 180-day statute of limitations.  However, plaintiff has stated a plausible claim of age discrimination under the ADEA.  Therefore, defendant's motion to dismiss Count II should be granted in part and denied in part.

### C.  Count III: Pregnancy Discrimination under the PDA and Ohio Rev. Code § 4112.02(A)

Defendant moves to dismiss plaintiff's pregnancy discrimination claims brought under the PDA and state law.  (Doc. 24 at 13-15).  Defendant argues that the facts alleged by plaintiff do not plausibly give rise to an inference that Honeywell discontinued plaintiff's STD benefits after her miscarriage because of her pregnancy or a pregnancy-related condition.  (*Id.* at 15).

The PDA "makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1343 (2015).  The PDA[7] protects pregnant women, women who have gone through childbirth, and women who are suffering pregnancy-related medical conditions from adverse employment actions.  42 U.S.C. § 2000e(k).  Employers must treat protected employees "the same . . . as other persons not so affected but who are similar in their ability or inability to work."  *Id.*  This is notably different from other Title VII discrimination analyses where a

---

[6] Courts within the Sixth Circuit have held that the initiation of an EEOC charge or investigation does not toll the statute of limitations for claims based on Ohio state law.  *Rosecrans v. Vill. of Wellington*, No. 1:17-cv-1604, 2018 WL 807047, at *3 (N.D. Ohio Feb. 9, 2018) (citing *Jeffery-Wolfert v. UC Health*, No. 1:16-cv-656, 2017 WL 590296, at *4 (S.D. Ohio Feb. 14, 2017) (in turn citing *Macklin v. Turner*, No. 1:03-cv-2347, 2005 WL 2211170 (N.D. Ohio Sept. 9, 2015)).

[7] 42 U.S.C. § 2000e(k) provides: "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits…, as other persons not so affected but similar in their ability or inability to work."

plaintiff must demonstrate that the employee receiving favorable treatment is similarly situated in all respects.  *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996).

To establish a claim for pregnancy discrimination, a plaintiff must prove that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Tysinger v. Police Dept. of City of Zanesville*, 463, 573 (6th Cir. 2006) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)).  Regarding the fourth element of the prima facie case, "[t]emporal proximity can [ ] satisfy the nexus requirement in the pregnancy discrimination context."  *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006).  However, "[t]emporal proximity alone is usually insufficient to demonstrate a nexus unless the adverse action occurred soon after the pregnancy."  *Ward v. Sevier Cty. Gov't*, 440 F. Supp. 3d 899, 907 (E.D. Tenn. 2020) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *Asmo*, 471 F.3d at 594; *Ensley-Gaines*, 100 F.3d at 1226), *appeal dismissed*, No. 20-5315, 2020 WL 3442263 (6th Cir. May 19, 2020).  "Absent a close temporal proximity, a plaintiff must provide other evidence of a causal connection such as evidence 'that another employee who is similarly situated in her or his ability or inability to work received more favorable benefits[,]' *Ensley-Gaines*, 100 F.3d at 1226, or evidence of disparaging comments by decision-makers about the plaintiff's pregnancy, *Figgins v. Advance Am. Cash Advance Ctrs. Of Mich., Inc.*, 476 F. Supp. 2d 675, 688 (E.D. Mich. 2007)."  *Id.*  Pregnancy discrimination suits brought under Ohio Rev. Code § 4112.02(A) are "evaluated generally under the same substantive standards" as claims under the PDA.  *Tysinger*, 463 F.3d at 572 (citing *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 471-72 (6th Cir. 2005); *Cleveland v. Federal Express Corp.*, 83 F. App'x. 74, 81 n.2 (6th Cir. 2003)).

20

Here, plaintiff has alleged sufficient facts at the pleading stage to state a claim of pregnancy discrimination.  Plaintiff alleges that she suffered from a miscarriage and took an approved FMLA medical leave on February 14, 2018.  (Doc. 19 at ¶ 37).  *See Ingarra v. Ross Educ., LLC*, No. 13-cv-10882, 2014 WL 688185, at *4 (E.D. Mich. Feb. 21, 2014) (noting that a miscarriage is a pregnancy-related condition under the PDA).  As a result of her pregnancy-related condition, plaintiff thereafter requested and was denied an extension of her STD income benefits on April 19, 2018.  The close temporal proximity of two months between plaintiff's miscarriage and the denial of an extension of her benefits is sufficient to state a plausible claim for relief under the PDA and state law.  *See Asmo*, 471 F.3d at 594 (holding that two months between pregnancy and adverse employment action was sufficient to establish a causal link).[8] Defendant argues that plaintiff was denied an extension of her STD benefits because Cigna determined that plaintiff "was no longer disabled due to pregnancy or any other qualifying condition, and therefore was not eligible for continuing benefits beyond March 27, 201[8]."  (Doc. 24 at 14).[9]  Defendant attaches the April 19, 2018 STD denial letter in support of its argument.  (Doc. 24-2).  In response, plaintiff presents a letter from her doctor suggesting that plaintiff's disability continued through April 30, 2018.  (Doc. 26, Ex. T).  The parties' differing version of the facts cannot be resolved on a motion to dismiss and is more appropriately addressed at the summary judgment stage.  Neither the prima facie requirement nor the pleading stage is intended to be "onerous" or to "stymie plaintiffs, but simply serves to bring litigants and the court expeditiously and fairly to the ultimate question."  *Flint v. Mercy Health Reg'l Med.*

---

[8] The Court notes that it is questionable whether the alleged denial of an extension of disability benefits can alone constitute adverse action.  However, without the benefit of the parties' briefings on the issue, at this stage in the proceedings, the Court assumes without deciding that it does.

[9] Defendant Honeywell assumes for purposes of the motion to dismiss only that plaintiff's claims arising from Cigna's communications as referenced in Count 3 (pregnancy discrimination) and Count 13 (FMLA interference and retaliation) are properly asserted against Honeywell.  (Doc. 24 at 15).

*Ctr., LLC*, No. 1:19-cv-610, 2019 WL 6270916, at *4 (N.D. Ohio Nov. 25, 2019) (quoting

*Pizzimenti v. Oldcastle Glass Inc.*, 666 F. Supp. 2d 839, 845 (N.D. Ohio 2009) (in turn

quoting *Cline*, 206 F.3d at 660).  Therefore, at this stage in the proceedings, plaintiff has pleaded

sufficient facts to give rise to a plausible claim for pregnancy discrimination under the PDA and

Ohio law.  Defendant's motion to dismiss the Count III pregnancy discrimination claims should

be denied.

### D. Count IV: Wage Discrimination

Defendant moves to dismiss plaintiff's wage discrimination brought under Ohio Rev.

Code § 4111.17.  Defendant argues that plaintiff's wage discrimination claim is barred by the

one-year statute of limitations.  (Doc. 24 at 15).  In response, plaintiff contends that wage

discrimination occurred at different times during her employment within the Installation

Department between 2015 and 2017.  (Doc. 26 at 7).

Ohio's version of the Equal Pay Act, Ohio Rev. Code § 4111.17, provides in relevant

part: "No employer . . . shall discriminate in the payment of wages on the basis of race, color,

religion, sex, age, national origin, or ancestry by paying wages to any employee at a rate less

than the rate at which the employer pays wages to another employee for equal work on jobs the

performance of which requires equal skill, effort and responsibility, and which are performed

under similar conditions."  Ohio Rev. Code § 4111.17(A).  Ohio's wage discrimination statute

has a one-year statute of limitations period.  Ohio Rev. Code § 4111.17(E).  Only the latest

instance of wage discrimination needs to fall within that one-year period.  *See Greenleaf v. DTG*

*Operations, Inc.*, No. 2:09-cv-192, 2011 WL 883022, at * 10 (S.D. Ohio March 11, 2011) (citing

*Featzka v. Millcraft Paper Co.*, 405 N.E.2d 264, 267 (Ohio 1980)).  "Under Ohio law, each

paycheck of unequal pay is a continuing violation, so the plaintiff may seek recovery for each day that the inequality persisted." *Id.*

In the second amended complaint, plaintiff alleges two facts in support of her state law wage discrimination claim: (1) Sanderson was promoted to Supervisor of the Installation Administration Team over plaintiff and (2) plaintiff was unfairly compensated for the skill, effort, and level of responsibility that she provided to the Installation Department. (Doc. 19 at ¶¶ 75, 77). Assuming that these allegations are actionable, plaintiff's wage discrimination claim under Ohio Rev. Code § 4111.17(A) is time-barred by the one-year statute of limitations. Plaintiff alleges that Sanderson was promoted sometime between August 2015 and October 2015, which falls well outside the one-year statute of limitations. (Doc. 19 at ¶ 16). Likewise, plaintiff's allegations that she was "unfairly compensated" for the duties performed in the Installation Department are also untimely. In her response in opposition to defendant's motion to dismiss, plaintiff clarifies the basis for this claim—that defendant "improperly applied her promotion merit increase to her previous salary before transferring her from a salaried position to an hourly position," which resulted in making less wages after her promotion. (Doc. 26 at 7). Plaintiff attaches an email chain from April 2015 where she emailed HR to inform them that she was making less money than she was prior to her promotion. (Doc. 26-1 at 1-6). Plaintiff did not file this action until August 2019—four years after Sanderson's promotion and her promotion salary dispute in 2015.[10] Accordingly, plaintiff's claim under Ohio Rev. Code § 4111.17(A) should be dismissed because it is time-barred by the one-year statute of limitations.[11]

---

[10] It is unclear whether the salary dispute that plaintiff initiated in 2015 was ever resolved. (*See* Doc. 26-1 at 1-6). If plaintiff had alleged facts showing that the decreased salary continued until her termination, her last paycheck could fall within the one-year period and provide a timely cause of action. This cannot reasonably be inferred without resorting to speculation based on the facts presented. *See Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678.

[11] In her response in opposition to defendant's motion to dismiss, plaintiff alleges that claims under the Equal Pay Act can be asserted within 2 years of the instance of wage discrimination, or three years if it is a willful violation.

### E. Count VI: Disparate-Treatment Discrimination under Ohio Rev. Code § 4112.02

Plaintiff alleges under Ohio Rev. Code § 4112.02 that defendant discriminated against her by treating her differently than similarly-situated white colleagues and subjecting her to heightened scrutiny and criticism, which created a racially hostile work environment.  (Doc. 19 at ¶¶ 86-90).  Defendant moves to dismiss this count, arguing that it is identical to and subsumed by Count I.  (Doc. 24 at 16).  Plaintiff's racially hostile environment claims under Title VII and Ohio Rev. Code § 4112.02 have already been analyzed in Section A above, and the undersigned has recommended defendant's motion to dismiss these claims be denied.  However, the Court agrees that plaintiff's Count VI claim under Ohio Rev. Code § 4112.02 should be dismissed as duplicative.

### F. Count VII: Aiding and Abetting Discrimination under Ohio Rev. Code § 4112.02(J)

Plaintiff alleges under Ohio Rev. Code § 4112.02(J) that defendant aided and abetted discrimination by "engaging in a pattern-or-practice of racial and retaliatory harassment."  (Doc. 19 at ¶ 92).  Defendant moves to dismiss Count VII, arguing that it cannot be asserted against Honeywell, the sole defendant in this case, because it cannot aid or abet itself in committing discriminatory acts.  (Doc. 24 at 16).  In response, plaintiff argues defendant is legally recognized as a "person" because of its status as a corporation.  (Doc. 26 at 9).  In reply, defendant maintains that claims under Ohio Rev. Code § 4112.02(J) must be brought against an individual who facilitated another's crime.  (Doc. 28 at 5).

Subsection (J) of Ohio Rev. Code § 4112.02 makes it unlawful "[f]or *any person* to aid, abet, incite, compel, or coerce" an unlawful discriminatory practice "or to attempt directly or

---

(Doc. 26 at 8).  However, the second amended complaint only brings a state law claim under Ohio Rev. Code § 4111.17(A) and not a federal law claim under the Equal Pay Act.

indirectly to commit any act declared by this section to be an unlawful discriminatory practice."

Ohio Rev. Code § 4112.02(J) (emphasis added). Section 4112.02(J) thus "holds individual

employees liable for their participation in discriminatory practices." *Hauser v. City of Dayton*

*Police Dep't*, 17 N.E.3d 554, 558 (Ohio 2014). In this case, however, plaintiff cannot bring a

claim under Ohio Rev. Code § 4112.02(J) on the basis that Honeywell—the sole defendant in

this case—aided and abetted itself in racial discrimination. *See Siwik v. Cleveland Clinic*

*Found.*, No. 1:17-cv-1063, 2019 WL 1040861, at *27 (N.D. Ohio Mar. 5, 2019) (noting that a

corporate entity cannot aid and abet itself in violations of the Ohio Civil Rights Act) (citing

S*ampson v. Sisters of Mercy of Willard, Ohio*, No. 3:12-cv-00824, 2015 WL 3953053 (N.D.

Ohio June 29, 2015)). *See also Pittman v. Parillo*, No. CI0201402890, 2017 WL 1422891, at

*18 (Ohio Ct. App. Apr. 21, 2017) (Liability is based on whether an individual "facilitate[ed]

another's violation of R.C. 4112.02."). Accordingly, plaintiff's claim under Ohio Rev. Code §

4112.02(J) should be dismissed.

### G. Count VIII: Breach of Implied Contract

Plaintiff alleges in Count VIII that defendant breached an implied contract of

employment that is implicit in Honeywell's policies on Equal Employment Opportunity

Workplace Harassment, Vacation for Non-Exempt employees, and Paid Sick Leave. (Doc. 19 ¶¶

95-96). Defendant argues that Count VIII should be dismissed because these policies referenced

by plaintiff contain express disclaimers that the policies were not intended to create contractual

obligations. (Doc. 24 at 17).

In Ohio, an employment relationship is regarded as employment-at-will that can be

terminated at any time by the employer. *Seta v. Reading Rock, Inc.*, 654 N.E.2d 1061, 1065

(Ohio Ct. App. 1995). However, "[e]mployee handbooks, company policy, and oral

representations may give rise to implied contractual provisions that alter the terms of an oral at-will employment relationship." *Id.* (citing *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 154 (Ohio 1985)).   In addition, "[a]n employer's right to discharge an employee may also be limited by representations or promises made to the employee which fall within the doctrine of promissory estoppel." *Id.*  Under Ohio law, absent fraud, a disclaimer in an employee handbook or other company policy stating that employment is at-will precludes an employment contract other than at-will.  *Reynolds v. Extendicare Health Servs., Inc.*, No. 1:05-cv-00359, 2006 WL 2225836, at *9 (S.D. Ohio Aug. 1, 2006) (quoting *Wing v. Anchor Media, Ltd. of Texas*, 570 N.E. 2d 1095, 1098 (Ohio 1991)), *aff'd*, 257 F. App'x 914 (6th Cir. 2007).

Plaintiff's second amended complaint attaches each policy that she alleges creates an implied contract.  (Doc. 19-1, Ex. A-1; Doc. 19-4, Ex. N-1, N-2, and N-3).  Each of these policies contains a disclaimer stating:

> This Policy is not intended to create contractual obligations.  Employment with the Company in the U.S. (other than Puerto Rico) is at will, which means that either the Company or the employee may terminate the employment relationship at any time and for any reason, without notice. . . .

(*See* Doc. 19-1, Ex. A-1 at PAGEID# 839 (Harassment Policy); Doc. 19-4, Ex. N-1 at PAGEID# 888 (Sick Leave Policy); Doc. 19-4, Ex. N-2 at PAGEID# 903 (Vacation Policy); Doc. 19-4, Ex. N-3 at PAGEID# 896 (Medical Leave of Absence Policy)).  In light of the language of the harassment, sick leave, vacation, and medical leave of absence policies expressly stating that employment with Honeywell is at-will and the policies are not intended to create contractual obligations, there is no implied contract between plaintiff and Honeywell.  Accordingly, plaintiff's Count VIII for breach of an implied contract should be dismissed.

### H.  Count IX: Promissory Estoppel

Plaintiff alleges in her Count IX promissory estoppel claim that defendant violated its promise to protect her from retaliation and harassment after reporting incidents of unethical behavior.  (Doc. 19 at ¶ 100).  Plaintiff alleges that Honeywell broke its promise when it "failed to protect [her] from a hostile work environment, failed to promptly investigate her workplace harassment complaint in an appropriate manner and failed to protect [her] from retaliation."  (*Id.* at ¶ 101).  Defendant moves to dismiss this claim, arguing that plaintiff has failed to allege sufficient facts to support her claim for promissory estoppel.  Specifically, defendant contends that plaintiff has failed to allege that Honeywell "reasonably should have expected to induce action or forbearance" by plaintiff through its policies prohibiting harassment, discrimination, and retaliation and that plaintiff took any affirmative steps or opportunities based on defendant's alleged promises in these policies.  (Doc. 24 at 18-19).  In response, plaintiff maintains that she detrimentally relied on defendant's alleged promise to protect her from workplace harassment and retaliation when she reported unethical behavior in her department.  (Doc. 26 at 11).  Plaintiff clarifies that the alleged "promises" were company policies and emails requiring her to report unethical or improper business behavior, as well as harassment.  (*Id.* at 11).

To prevail on a claim of promissory estoppel in the employment context, plaintiff must demonstrate "(1) that the employer made a promise, (2) which the employer reasonably should have expected to induce action or forbearance by the employee, (3) that there was such action or forbearance by the employee, and (4) injustice can only be avoided by enforcement of the promise."  *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1041 (6th Cir. 1992) (citing *Mers*, 483 N.E.2d at 154).  Plaintiff has failed to state a claim for promissory estoppel under these elements.  Plaintiff has failed to allege either a promise of continued employment or allege any facts from

which it can be inferred that such a promise was made.  Even though plaintiff alleges she was following company policy and required to report instances of unethical practices or harassment, she does not allege facts suggesting that defendant made any explicit or specific representations of continued employment.  *See Welch v. Finlay Fine Jewelry Corp.*, No. 01AP-508, 2002 WL 206047, at *3 (Ohio Ct. App. Feb. 12, 2002) (dismissing promissory estoppel claim where plaintiff alleged she was terminated for following company policies and procedures regarding locking cabinet doors to company safe because the plaintiff did not allege that "she was told by her supervisors that if she followed their instructions with regard to security issues, her employment would be secure" and rejecting the notion that "an employee's compliance with instructions given by a supervisor is an implicit promise of continued employment").  *See also Wing*, 570 N.E. 2d at 1099 (holding that "a promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the well-established doctrine of employment at will").  Nor do the policies that she attaches to the second amended complaint and that she cites in opposition to the motion to dismiss suggest an explicit representation of continued employment.  As stated above in connection with plaintiff's breach of implied contract claim, the policies that she attaches to the second amended complaint note that they are not to be construed as creating contractual obligations.  Plaintiff argues that she was required by these company policies to report instances of misconduct and harassment.  (Doc. 26 at 10-11).  Even so, plaintiff's "subjective belief that if she obeyed her [company's] order she would be ensured continued employment cannot be a substitute for allegations of a specific promise of continued employment by the employer."  *Welch*, 2002 WL

206047, at *3.  Because plaintiff has not alleged a specific promise of continued employment, plaintiff's Count IX promissory estoppel claim should be dismissed.[12]

### I. Count X: Wrongful Discharge in Violation of Public Policy

Plaintiff alleges that defendant wrongfully terminated her in violation of public policy and that her termination was a result of Honeywell's alleged retaliatory and discriminatory practices.  (Doc. 19 at ¶¶ 104-10).[13]  Defendant moves to dismiss plaintiff's Count X claim, arguing that plaintiff may not bring a common law wrongful discharge claim because it is clear that existing law for race discrimination and retaliation provides remedies sufficient to vindicate the public policy at issue.  (Doc. 24 at 19-20).

"[P]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute."  *Queen v. Park Nat'l Bank*, No. 2:09-cv-00033, 2010 WL 11639834, at *4 (S.D. Ohio Mar. 10, 2010) (quoting *Greeley v. Miami Valley Maint. Contractors, Inc*., 551 N.E.2d 981, 986 (Ohio 1990), *overruled in part on other gds.*, *Tulloh v. Goodyear Atomic Corp*., 584 N.E.2d 729 (1991)).  *See also Dohme v. Eurand Am., Inc.*, 956 N.E.2d 825, 829 (Ohio 2011) ("[I]f an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a cause of action for wrongful discharge in violation of public policy may exist as

---

[12] Promissory estoppel also requires that "injustice can only be avoided by enforcement of the promise."  *Mers*, 483 N.E.2d at 154.  Here, plaintiff has also brought a retaliation claim in Count V under Ohio Rev. Code § 4112.02. Defendant does not move to dismiss plaintiff's retaliation claim; therefore, plaintiff will have an opportunity to address any alleged injustices resulting from her reports of harassment under her retaliation claim.
[13] Plaintiff cites Ohio Rev. Code § 4112.99 as the statutory provision governing her claim for wrongful termination. However, claims for wrongful termination in violation of public policy are governed by common law, not statute.

an exception to the general rule [of employment-at-will].").  In order to maintain a common-law

claim for wrongful termination in violation of Ohio public policy, a plaintiff must allege:

> 1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4.  The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Leininger v. Pioneer Nat'l Latex*, 875 N.E.2d 36, 39-40 (Ohio 2007).

The Ohio Supreme Court has stated that the second element of a wrongful termination

claim, the jeopardy element, requires a court to examine whether there are alternative means of

promoting the public policy at issue:

> Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, the issue of adequacy of remedies becomes a particularly important component of the jeopardy analysis.  If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy.  Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests.

*Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002).  For this reason, plaintiff cannot

bring a claim for wrongful discharge in violation of public policy based on her allegations that

she was subjected to a racially hostile work environment and retaliation.  The Sixth Circuit has

held that a claim for wrongful discharge in violation of public policy fails where both Title VII

and Ohio Rev. Code § 4112.02 provide plaintiff with adequate protection and remedies.

*Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004).  As determined above,

plaintiff has plausibly stated a claim for relief for a racially hostile work environment under both

Title VII and Ohio Rev. Code § 4112.02; therefore, she has remedies available to her under these statutes.  In addition, defendant has not moved to dismiss plaintiff's Count V retaliation claim under Ohio Rev. Code § 4112.02; therefore, she has remedies available to her under this statute.  Accordingly, plaintiff's Count X claim for wrongful discharge in violation of public policy should be dismissed.[14]

### J. Count XI: Misrepresentation and Fraud

In her Count XI misrepresentation and fraud claim, plaintiff alleges that defendant made false representations to employees about its policies on Equal Opportunity and Harassment, including that it would protect employees from discrimination, harassment, and retaliation. (Doc. 19 at ¶ 112).  To state a claim for fraudulent misrepresentation under Ohio law, a plaintiff must allege: "(1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance."  *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011) (citing *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859 (1998)).  To survive a motion to dismiss, the circumstances constituting fraud must be pled with "particularity."  Fed. R. Civ. P. Rule 9(b).  At a minimum, Rule 9(b) requires a plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent."

---

[14] In her response in opposition to defendant's motion to dismiss, plaintiff argues that "[e]mployers cannot fire employees due to acts of whistle blowing, or alerting the authorities about employer conduct that is hazardous to the general public."  (Doc. 26 at 12).  The Court declines to consider this argument.  Plaintiff neither cites authority in support of nor develops this argument.  In addition, the facts alleged in Count X of the second amended complaint do not mention whistleblowing or alerting authorities about hazardous conduct.

*Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 493 (6th Cir. 2019) (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (internal citation omitted)).

Here, plaintiff has failed to allege any facts to show that the statements made in defendant's policies were "made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred." *Stuckey*, 819 F. Supp. 2d at 682. Though plaintiff alleges that Honeywell violated its own policies in handling her reports of harassment and unethical activities, the Court cannot plausibly infer beyond plaintiff's speculative belief that Honeywell published and maintained these policies falsely with the intention of misleading employees. Moreover, the "facts" upon which plaintiff relies—that she was retaliated against for reporting harassment and unethical workplace activities—are not factual allegations but legal conclusions couched as factual allegations that the Court need not accept as true. *See Twombly*, 550 U.S. 555. Accordingly, plaintiff's Count XI claim for fraud and misrepresentation should be dismissed.

### K. Count XII: Intentional Infliction of Emotional Distress (IIED)

Plaintiff's Count XII claim alleges that defendant "engaged in extreme and outrageous conduct towards her and that [its] conduct caused her to suffer severe emotional distress which caused her to suffer two miscarriages." (Doc. 19 at ¶ 118). Defendant moves to dismiss this claim on the basis that plaintiff has not alleged facts sufficient to rise to the level of "extreme and outrageous" conduct as required to state a claim for intentional infliction of emotional distress ("IIED") under Ohio law. (Doc. 24 at 22-23).

In Ohio, a plaintiff claiming intentional infliction of emotional distress must show the following: (1) the defendant intended to cause plaintiff's emotional distress or should have

known that such serious emotional distress would result, (2) the defendant's conduct was

outrageous, extreme, beyond all possible bounds of decency, and utterly intolerable in a civilized

community, (3) the defendant's conduct proximately caused the plaintiff's psychic injury, and

(4) the plaintiff's emotional distress was so serious that no reasonable person could be expected

to endure it. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008).

"Ohio courts have held that a party must act in an extreme and outrageous manner, a manner in

which if the story is told would extract the exclamation of 'outrageous!' from a reasonable

person." *Hall v. United Labs, Inc.*, 31 F. Supp. 2d 1039, 1044 (N.D. Ohio 1998) (citing *Pyle v.*

*Pyle*, 463 N.E.2d 98, 104 (Ohio Ct. App. 1983)).

The allegations of the complaint do not satisfy the element of extreme or outrageous

conduct so as to state an intentional infliction of emotional distress claim.  As this Court has

noted:

> [L]iability for intentional infliction of emotional distress "has been found only
> where the conduct has been so outrageous in character, and so extreme in degree,
> as to go beyond all possible bounds of decency, and to be regarded as atrocious,
> and utterly intolerable in a civilized community." *Yeager* [*v. Local Union 20,*
> *Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*,] 453 N.E.2d [666] 671
> [(Ohio 1983)] [*abrogated on other gds. by Welling v. Weinfeld*, 866 N.E.2d 1051
> (Ohio 2007).]   "[A]n employee's termination, even if based upon discrimination,
> does not rise to the level of 'extreme and outrageous conduct' without proof of
> something more.  If such were not true, then every discrimination claim would
> simultaneously become a cause of action for the intentional infliction of emotional
> distress." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).

*Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 709-10 (S.D. Ohio 2014).  In her

response in opposition to the motion to dismiss, plaintiff clarifies the basis of her IIED claim:

that Honeywell engaged in "extreme" and "outrageous" conduct by harassing and attempting to

"stifle" and "remove" her completely from her position, as well as retaliating against her for

filing an OCRC charge and retaliating against her during the course of the 2017 Honeywell

internal investigation.  (Doc. 26 at 15-16).  These facts, however, do not indicate conduct rising

to the level of extreme or outrageous as required to state a viable IIED claim.  *See Crawford v. ITT Consumer Fin. Corp.*, 653 F. Supp. 1184, 1192 (S.D. Ohio 1986) (holding "that the alleged pattern of pressure and harassment of plaintiff; the intentional downgrading of plaintiff's performance appraisal; the threats of demotion and/or termination, all of which conduct may be assumed to have resulted in causing plaintiff to suffer serious embarrassment and humiliation, as well as psychological and physical problems, do not, as a matter of law, state a viable claim for IIED").  Accordingly, plaintiff's Count XII IIED claim should be dismissed.

### L. Count XIII: FMLA Interference and Retaliation

Plaintiff alleges that defendant interfered and retaliated with her rights under the FMLA after she filed a charge of discrimination with the OCRC.  (Doc. 19 at ¶¶ 120-23).  Plaintiff contends that defendant denied her STD benefits while she was on an approved FMLA leave.  (Doc. 19 at ¶¶ 38-39).  Defendant moves to dismiss Count XIII, arguing that plaintiff has failed to state a claim for FMLA interference or retaliation.  (Doc. 24 at 24-25).  Defendant argues that plaintiff does not allege that she was denied FMLA leave to which she was entitled and concedes that she requested and was approved FMLA leave for her pregnancy-related condition.  (*Id.* at 24).  Defendant contends that plaintiff does not allege a causal connection between her FMLA leave (which Honeywell approved) and the determination to discontinue her STD benefits beyond March 27, 2019 in order to sustain her FMLA retaliation claim.  (*Id.* at 25)

To establish an FMLA interference claim, a plaintiff must show that (1) she was an eligible employee; (2) defendant was her employer; (3) she was entitled to FMLA leave; (4) plaintiff gave defendant notice of her intention to take leave; and (5) defendant denied plaintiff FMLA benefits to which she was entitled.  *Soehner v. Time Warner Cable, Inc.*, No. 1:08-cv-166, 2009 WL 3855176, at *4 (S.D. Ohio Nov. 16, 2009) (citing *Novak v. Metro Health Med.*

*Ctr.*, 503 F.3d 572, 577-78 (6th Cir. 2007)).  Here, plaintiff has not sufficiently alleged that defendant denied her FMLA benefits to which she was entitled.  The allegations in Count XIII relate to the denial of STD benefits for her pregnancy-related condition, which is separate and distinct from her request for FMLA leave.  Accordingly, plaintiff has failed to state a claim for FMLA interference.

However, the undersigned concludes that plaintiff has sufficiently stated a claim for FMLA retaliation at this juncture.  To prove her FMLA retaliation claim, plaintiff must show that (1) she was engaged in a protected activity as defined by the FMLA; (2) defendant knew she was using FMLA; (3) she was subjected to an adverse employment action after defendant learned that she was exercising her FMLA rights; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)).  Plaintiff alleges that she was denied an extension of her STD benefits while on an approved FMLA leave for her pregnancy-related condition.  (Doc. 19 at ¶ 122).  Like her pregnancy discrimination claim above, the two month temporal proximity between plaintiff's use of FMLA leave and the adverse action (the denial of an extension of her STD benefits) is sufficient to allege a causal connection between the two and state a claim of FMLA retaliation at this stage of the proceedings.  *Rosen v. Guardsmark, LLC*, No. 13-2369, 2013 WL 6814421, at *7 (W.D. Tenn. Dec. 20, 2013) ("[T]he Sixth Circuit has concluded that a plaintiff states a plausible claim for retaliation under the FMLA where the pleadings allege the employer's unlawful actions, the employee's protected activity, and an adverse action coming 'mere months' after the employee engaged in protected activity") (citing *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 583-84 (6th Cir. 2012)).

35

Relying on information outside the record, defendant contends that plaintiff was denied an extension of her STD benefits consistent with the recommendation of her physician; however, such an argument is more appropriately reserved for the summary judgment stage. Accordingly, defendant's motion to dismiss Count XIII should be granted as to plaintiff's FMLA interference claim and denied as to plaintiff's FMLA retaliation claim.

### M. Count XIV: Defamation

Plaintiff alleges under Ohio Rev. Code § 2739.01 that defendant defamed her by making untrue statements about her during the course of the OCRC investigation. (Doc. 19 at ¶¶ 124-29).[15] Defendant argues that these representations are protected by absolute privilege as they were made in the course of quasi-judicial proceedings. (Doc. 24 at 25). Plaintiff does not respond to defendant's affirmative defense of privilege.

Absolute privilege has been afforded to remarks made in legislative and judicial proceedings. *Reddy v. JP Morgan Chase Bank, N.A.*, No. 2:09-cv-1152, 2011 WL 1641261, at *3 (S.D. Ohio May 2, 2011) (citing *Costanzo v. Gaul*, 403 N.E.2d 979 (Ohio 1980)). Absolute privilege has also been granted when potentially defamatory remarks have been made in the course of OCRC investigations. *Id.* at *3; *see also Cirotto v. Heartbeats of Licking County*, No. 10-CA-21, 2010 WL 3495623 (Ohio Ct. App. Sept. 7, 2010) (holding that statements in defendant's response to plaintiff's complaint in an OCRC investigation were protected by absolute privilege); *Canady v. Rekau*, No. 2:07-cv-1266, 2008 WL 11351575, at *2 (S.D. Ohio Oct. 27, 2008) (holding that Ohio law extends absolute privilege to statements made in OCRC proceedings). Accordingly, because defendant's remarks were made during the OCRC

---

[15] Plaintiff also alleges that representations made by Cigna to the Ohio Department of Insurance (ODI) constituted defamation. (Doc. 19 at ¶ 126). Cigna's representations to ODI cannot be attributed to defendant as they are separate entities and Cigna is not a named defendant in this lawsuit. *Doe v. Mount Vernon City School District Board of Education*, No. 2:08-cv-575, 2010 WL 1433301, at *4 (S.D. Ohio April 6, 2010).

investigation and are protected by absolute privilege, plaintiff's defamation claim should be dismissed.

**IV.  Conclusion**

Based on the foregoing, it is **RECOMMENDED** that:

1. Defendant's partial motion to dismiss the second amended complaint (Doc. 24) be **DENIED** as to Counts I (racially hostile work environment), II (ADEA claim), III, XIII (FMLA Retaliation), and **GRANTED** under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted as to Counts II (age discrimination under Ohio Rev. Code § 4112.02), IV, VI, VII, VIII, IX, X, XI, XII, XIII (FMLA Interference), and XIV.

It is **ORDERED** that:

1. Defendant's motion for a telephonic conference (Doc. 13) is **DENIED** as **MOOT.**

Date:   9/11/2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MALISSA R. HARMON,                                   Case No. 1:19-cv-670
          Plaintiff,                                               Cole, J.
                                                                       Litkovitz, M.J.

          vs.

HONEYWELL INTELLIGRATED,
          Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).