UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MALISSA R. HARMON, *pro se*, | CASE NO.  1:19-CV-670 |
| Plaintiff, | JUDGE DOUGLAS R. COLE |
| v. | MAGISTRATE JUDGE KAREN L. LITKOVITZ |
| INTELLIGRATED, INC., | **DEFENDANT'S PARTIAL OBJECTIONS TO ORDER AND REPORT AND RECOMMENDATION ON DEFENDANT'S PARTIAL MOTION TO DISMISS** |
| Defendant. | |

Pursuant to Fed. R. Civ. P. 72(b), Defendant Intelligrated, Inc. d/b/a Honeywell Intelligrated ("Honeywell) objects to the Magistrate's Order and Report and Recommendation (the "R&R") (Doc. 29) on Defendant's Partial Motion to Dismiss the Second Amended Complaint ("SAC") (Doc. 24) in the following respects:

1. **Count 1.  Racial Harassment under Title VII and Ohio R.C. § 4112.02(A)**: The allegations in the SAC do not rise to the level of severe and pervasive harassment as required to state a claim for racial harassment, as articulated by the Sixth Circuit and courts within.  As such, Count I should be dismissed to the extent he asserts a claim for hostile work environment based on race.

2. **Count 3:  Pregnancy Discrimination:** The SAC lacks any factual allegations from which the Court could infer that that Honeywell intended to discriminate against Plaintiff when it denied an extension of Plaintiff's short term disability benefits on April 19, 2018 or that other employees who did not suffer from pregnancy-related conditions were treated more favorably.  The court therefore should dismiss Count III of the SAC.

3. **Count 8: FMLA Retaliation:** The SAC does not contain any factual allegations from which the Court could infer that Honeywell retaliated against Plaintiff for taking FMLA leave in February 2018 when it denied an extension of her short term disability benefits on April 19, 2018.

4. **OCRC Finding:** The R&R improperly relies on documents in the Ohio Civil Rights Commission file underlying Plaintiff's charge to support otherwise inadequate allegations of race discrimination (Count I) age discrimination (Count II), despite the fact such materials carry "an evidentiary value of practically zero." *E.E.O.C. v. Ford Motor Co.*, No. 95-3019, 1996 WL 557800, at *10 (6th Cir. Sept. 30, 1996).

**Introduction and Procedural Background**

Plaintiff Malissa Harmon became employed by Honeywell in 2010 and was an Installation Administrative Specialist at all times relevant to this action. (SAC, Doc. 19, ¶¶ 8, 12.) The core of Plaintiff's claim is her allegation that she was subject to racial discrimination when a white co-worker, Misty Sanderson, was promoted to the position of Installation Administration Supervisor instead of Plaintiff, who is Black; that Sanderson then allegedly treated white employees more favorably than Plaintiff; and that Honeywell retaliated against Plaintiff for filing a charge of discrimination with the Ohio Civil Rights Commission in September 2017. (Doc. 19, ¶¶ 16, 20, 30.) In February 2018, Plaintiff requested and was granted FMLA leave upon suffering a miscarriage. (*Id*., ¶ 37.) Plaintiff never returned to work and was terminated nearly 20 months later, on October 3, 2019. (*Id.*, ¶ 53.)

Plaintiff's Second Amended Complaint was her third attempt at a comprehensible pleading in compliance with the federal rules of civil procedure. Following Plaintiff's initial Complaint (Doc. 3) and her First Amended Complaint (Doc. 6), which consisted of 129 pages

and 504 paragraphs, the Magistrate afforded Plaintiff additional leeway as a pro se litigant and granted her leave to file a Second Amended Complaint of no more than 20 pages in length. (Doc. 18, PageID 810-811.) While the SAC was more intelligible than Plaintiff's previous filings, the vast majority of her fourteen causes of action were subject to dismissal under Rule 12(b)(6). Honeywell acknowledged that, strictly for purposes of Rule 12(b)(6), the SAC contained minimally sufficient allegations to state claims for race discrimination generally under Title VII and Ohio R.C. § 4112.02 (Count 1) and retaliation under Ohio R.C. § 4112.02 (Count 5). Honeywell moved for partial dismissal of the SAC on the remaining claims, including Counts 1 (in part), 2-4, and 6-13. (Doc. 29). The Magistrate's Order and Report and Recommendation (Doc. 29) concluded that Honeywell's Partial Motion to Dismiss should be granted as to counts 2 (insofar as it alleged age discrimination under Ohio law); 4, 6, 7, 8, 9, 10, 11, 12, 13 (FMLA interference) and 14; and denied as to Count 1 (insofar as it alleges a racially hostile work environment, 2 (ADEA), 3 (pregnancy discrimination) and 8 (FMLA retaliation).

While Honeywell disputes any liability under the ADEA, it does not object to the R&R with respect to Count 2. Accordingly, the subject Objections address Plaintiff's failure to state claims under Counts 1 (insofar as it alleges a racially hostile work environment), 3 (pregnancy discrimination) and 8 (FMLA retaliation). For the reasons set forth below, in Honeywell's Partial Motion to Dismiss (Doc. 24), and in its Reply Memorandum, (Doc. 28), the Court should reject the R&R as to those counts and order dismissal of each under Rule 12(b)(6).

**Law and Argument**

    A.    <u>The Factual Allegations of the SAC Fail to Allege Harassment So Objectively Severe or Pervasive as to Create a Hostile Work Environment.</u>

In Count 1 of the SAC, Plaintiff purports to state claims for both racial discrimination and racial harassment. Solely for purposes of its Motion to Dismiss, Honeywell acknowledged that Plaintiff's allegations were minimally sufficient to state a claim of discrimination. Contrary to the R&R, however, Plaintiff's allegations do not satisfy the plausibility requirement of Rule12(b)(6) sufficiently to state a claim of hostile work environment based on Plaintiff's race.

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Bailey v. USF Holland, Inc.*, 526 F.3d 880 (6th Cir.2008). To establish a hostile work environment claim, Plaintiff must prove that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on Plaintiff's race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions. *Armstrong v. Whirlpool Corp.*, 363 Fed. App'x. 317 (6th Cir.2010); *Barrett v. Whirlpool Co.*, 556 F.3d 502, 515 (6th Cir.2009).

In conclusory fashion, Plaintiff alleges that "Defendant treated Plaintiff less favorably than similarly situated white employees by subjecting her to heightened scrutiny, criticism, and investigation <u>which created a racially hostile work environment for her</u>." (Doc. 19, ¶ 57) (emphasis added). While the SAC is replete with references to a "hostile environment" (e.g. ¶¶ 16, 20) and alleges several stray comments that Plaintiff apparently considers hostile (e.g. ¶¶ 15,

4

20, 33), it does not allege a single comment, slur, joke, or other statement concerning Plaintiff's race.

Relying on *Bradley v. Arwood*, 705 Fed. Appx 411, 417-18 (6th Cir. 2017), the R&R concludes that Plaintiff "need not allege that she was the target of slurs, comments, or jokes based on her race", but only that "the challenged actions would not have occurred *but for* [her race]". (Doc. 29, PageID 1072) (internal quotations omitted) (emphasis in original). Per the R&R, the "challenged actions" included such conduct as subjecting Plaintiff to an allegedly unwarranted improvement plan, denying her promotions, the right to transfer departments and work from home; training Sanderson on supervisory tasks; Sanderson's raising her voice at Plaintiff and "getting close" in her face; giving Plaintiff's administrative responsibilities to younger, white employees, placing Plaintiff on a PIP, and transferring her to the accounting departments. (Doc. 29, Page ID 1072-73).

While the "challenged actions" to which the R&R refers may underlie Plaintiff's claim of race discrimination generally, they do not support a claim of hostile work environment, even for purposes Rule 12(b)(6). Subsequent to *Bradley*, the Sixth Circuit and numerous courts within have underscored the nature of the allegations required to demonstrate a hostile work environment based on a protected characteristic. *See Miller v. University Hospitals Health Systems, No.* 19-3788, 2020 WL 4783553 (6th Cir. Aug. 13, 2020) (affirming summary judgment on *pro se* plaintiff's hostile work environment where allegations "were insufficient to establish harassment so objectively severe or pervasive as to create a hostile work environment", where plaintiff alleged he was paid less than white, female, younger non-veteran employees in similar positions, that supervisor harassed him by bringing him into her office weekly, and that supervisor demanded he come to work when he took leave for medical treatment). *See also*

*Breeden v. Frank Brunckhorts Co.*, S.D. Ohio No. 2:19cv5515, 2020 WL 1923944, *4 (April 21, 2020 (Morrison, J.) In *Breeden*, the district court dismissed the plaintiff's hostile work environment claim under Rule 12(b)(6), observing that there were no allegations of physically threatening or humiliating behavior, other than an incident when a co-worker "ripped" a document from the plaintiff, and that other offensive workplace incidents were "insufficient to give rise to an inference that the workplace was "permeated with discriminatory intimation, ridicule and insult that [was] sufficiently severe or pervasive so as to alter conditions of her employment and create an abusive working environment." *Id.*, (quoting *Harris v. Forklift Systems, Inc.*, 410 U.S. 17, 21, 114 S.Ct. 367 (1993).[1] *See also Fisher v. Fuyao Glass America, Inc.*, No. 3:18-cv-405, 2020 WL 39623 (S.D. Ohio Jan. 6, 2020) (Rice, J.) (finding that plaintiff's allegations of transfer to a less desirable shift, demotion to temporary status, assignment of janitorial duties, lower pay than similarly situated Caucasian employees and superior's showing plaintiff a picture of her vagina when he approached her about his pay were insufficiently severe or pervasive to create an objectively hostile work environment and observing that "[w]hen the factual allegations in the Complaint are insufficient to state a plausible claim for relief, courts have not hesitate to dismiss hostile work environment claims under Fed. R. Civ. P. 12(b)(6) or 12(c).") *Id.*, at *3.

---

[1] As Judge Morrison observed, "[a] review of decisions from the Sixth Circuit reveals that it takes much more than Ms. Breeden has alleged to state a claim for a hostile work environment. See, e.g., *Rayford v. Illinois Cent. R.R.*, 489 F. App'x 1, 5 (6th Cir. 2012) (finding comments made to a male employee three or four times per week, such as being called "sweet booty" and being told a co-worker "wanted to mix coffee with his cream" and that "Ray got a big dick" for him, were "not so severe and pervasive that a reasonable person would find his work environment hostile and abusive"); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707-08 (6th Cir. 2007) (affirming district court's holding that "fifteen specific incidents spanning a two-year period" were "isolated" and "not pervasive")". *Breeden*, 2020 WL 1929344, at *4.

Here, the factual allegations in the SAC, even if established and considered as a whole, fall far short of the requisite "discriminatory intimidation, ridicule, or insult" sufficient to alter the conditions of Plaintiff's employment or create an abusive working environment. Therefore, Plaintiff's hostile work environment claim fails to raise a right to relief which is plausible on its face. Upon review of the R&R, the Court should dismiss Count 1 of the SAC insofar as it seeks to state a claim for a hostile work environment based on Plaintiff's race.

> B. The SAC Fails to Allege Facts Sufficient to State a Claim for Pregnancy Discrimination; The Temporal Proximity Between Plaintiff's Miscarriage and the Alleged Adverse Action is Insufficient to Infer Discriminatory Intent.

The R&R erroneously relied on the temporal relationship between Plaintiff's pregnancy-related condition (her February 14, 2018 miscarriage) and the alleged adverse action (Cigna's April 19, 2018 denial of Plaintiff's requested extension of her short term disability benefits) to find that Plaintiff stated a cause of action for pregnancy discrimination (Count 3).[2] Because the SAC lacks any plausible allegation that Honeywell intended to discriminate against Plaintiff due to her pregnancy, the Court should reject the R&R as it pertains to Plaintiff's claim of pregnancy discrimination.

The Pregnancy Discrimination Act (PDA) expanded the prohibition on discrimination "because of sex" as used in Title VII to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). "[W]omen affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." *Spees v. James Marine, Inc.*, 617 F.3d 380, 389 (6th Cir. 2010). However,

---

[2] As the R&R observes, "it is questionable whether the alleged denial of an extension of disability benefits can constitute adverse action". Honeywell expressly reserves the right to address this issue as this case proceeds in the event this Court declines to dismiss Counts 3 (pregnancy discrimination) and 13 (FMLA retaliation).

7

"the PDA does not categorically prohibit [adverse employment action against] pregnant employees who are unable to work. *Turner v. Hartford Nursing and Rehab*, No. 16-cv-12926, 2017 WL 3149143, at *3 (N.D. Ohio July 25, 2017) (quoting *Cleveland v. Fed. Express Corp.*, 83 Fed. Appx. 74, 81 (6th Cir. 2003). Pregnancy Discrimination Act claims are analyzed like Title VII claims generally, where a plaintiff bears the ultimate burden of demonstrating that the defendant <u>intentionally</u> discriminated against her. *Mullet v. Wayne-Dalton Corp.*, 338 F.Supp.2d 806, 812 (N.D. Ohio 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000). The *McDonnell Douglas*[3] framework applies, with the burden of proof at all times on the plaintiff to prove intentional discrimination. *Mullet*, 338 F. Supp.2d at 813.

Here, Plaintiff asserts pregnancy discrimination based on the following facts:

- Plaintiff was pregnant.
- On February 14, 2018, Plaintiff took an approved FMLA leave upon suffering a miscarriage.
- Honeywell, through its Healthcare Administrator CIGNA (LINA) denied Plaintiff's requested <u>extension</u> of short term disability benefits on April 19, 2018 while Plaintiff was under a "pregnancy-related condition".

(Doc. 19, ¶¶ 37-39.)

Because the SAC acknowledged that Plaintiff was initially approved for STD benefits, and expressly referenced Cigna's April 19, 2018 letter denying an extension of short term disability benefits, Honeywell attached the relevant documents to its Motion to Dismiss. (Doc.

---

[3] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

8

24-1; 24-2).[4] On February 23, 2018, Cigna notified Plaintiff that, <u>based on information regarding her medical condition, Cigna approved Plaintiff's STD benefits through March 27, 2018</u> (the "Feb. 23, 2018 STD Approval") (Doc. 24-1). On April 19, 2018, Cigna wrote to Plaintiff that, <u>based on information received from her physician, it determined Plaintiff was no longer disabled due to pregnancy or any other qualifying condition</u>, and therefore was not eligible for continuing benefits beyond March 27, 2019 (the "April 19, 2018 STD Denial") (Doc. 24-2). As the basis for that determination, the April 19, 2018 STD Denial stated, in part:

> We received your claim in our office on February 13, 2018; you reported that you had been unable to work since February 14, 2018, due to miscarriage.
> …
>
> A review of the medical information available shows there are no current objective quantifiable clinical exam findings, or diagnostic testing to demonstrate a total functional impairment. Your bleeding stopped as of March 16, 2018. Your provider did offer a prescription for stress but you turned down that treatment, and Dr. Andrew returned a blank Behavioral Health Questionnaire. We have not been told that you are treating with any specialist regarding any stress or anxiety. At this time your claim is closed with no further extension of benefits.
>
> While we are not disputing your diagnosis or symptoms that you were having, <u>the medical information provided to our office does not demonstrate an impairment of such severity that it would have prevented you from performing the duties of your own job as an Sr Assistant Admin Product Support.</u>

(emphasis added).[5]

Nothing in the April 19, 2018 Denial could plausibly give rise to an inference that Honeywell discontinued Plaintiff's STD benefits because of her pregnancy or a pregnancy-

---

[4] Though the documents reflecting the initial approval of Plaintiff's STD benefits, followed by the denial of extended benefits effective March 27, 2018 were not attached to the SAC, they were the basis for Plaintiff's pregnancy discrimination claim. As such, they were necessarily incorporated into her "pleading" and Honeywell attached the documents themselves. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), overruled on others grounds (Permitting defendant to attach and noting that a defendant "may introduce certain pertinent documents if the plaintiff fails to do so….")

[5] For purposes of this motion only, Honeywell assumes that Plaintiff's purported claims arising from Cigna's communications, as referenced in Counts 3 (Pregnancy Discrimination) and Count 13 (FMLA Interference and Retaliation) are properly asserted against Honeywell.

9

related condition. To the contrary, based on the conclusion of Plaintiff's treating physician that she no had symptoms from the miscarriage she suffered on or about February 14, 2018, Cigna determined that the pregnancy-related condition she previously suffered from no longer prevented her from performing her duties, i.e., <u>Plaintiff was able to work to the same extent as any other employee</u>, pregnant or not. As such, Honeywell (via Cigna) "treated [Plaintiff] the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work." *See Spees v. James Marine,* supra, 617 F.3d at 389. Indeed, the SAC nowhere alleges that other employees who were not pregnant or who did not suffer from a pregnancy-related condition were afforded short term disability benefits under similar conditions.

      With respect to Plaintiff's PDA claim, the R&R turns in large part on Plaintiff's submission of a letter from her physician "suggesting that plaintiff's disability continued through April 30, 2018" (Doc. 29, PageID 1081 (referencing Doc. 26, Ex. T, PageID 1043). According to the R&R, "[t]he parties' differing version of the facts cannot be resolved on a motion to dismiss and is more appropriately addressed at the summary judgment stage." *Id*. But that document has no bearing on the sufficiency of Plaintiff's claim for two reasons. First, the April 27, 2018 letter from Dr. Andrew says nothing about Plaintiff's condition. It is dated on a Friday, states only that Plaintiff was "under [his] care" and that she may return to work on Monday, April 30, 2018 (i.e. the next business day) without any restrictions. More importantly, Exhibit T, which is dated April 27, 2018, does not raise any factual issue as to whether Honeywell discriminated against Plaintiff a week earlier, on April 19, 2018, when it denied Plaintiff's requested extension of STD benefits <u>based on all of the documentation then in its possession</u>. Indeed, Cigna's April 19, 2018 determination (Doc. 24-2) is replete with references to Dr.

Andrew's submissions, including a medical request form submitted on April 2, 2018, indicating that Plaintiff was able to return to work on March 5, 2018, and a second one submitted on April 7, 2018, advising that Plaintiff was to return to work on April 16, 2018. *See* Doc. 24-2, PageID 952.

Based on the facts in Cigna's possession when it issued it's the April 19, 2018 Denial, as set forth in the body of that letter, the SAC does not give rise to an inference that Honeywell intended to discriminate against Plaintiff due to her pregnancy-related condition. To the contrary, the only reasonable conclusion to be inferred is that Honeywell will not extend benefits for employees – pregnant or not – whose physicians certify that they are fully able to work. Absent any allegations that Honeywell treated Plaintiff differently in that respect form employees who suffered from non-pregnancy related conditions, the SAC does not give rise to a cognizable claim of pregnancy discrimination. *See Mullet v. Wayne-Dalton, Corp.*, *supra*, 338 F.Supp.2d at 817 (dismissing claim of employee with pregnancy-related condition who was terminated after her failure to return to work in accordance with company policy, where employee could not demonstrate she was treated differently from similarly situated employees) (citing *Hensely v. Boddie-Noell Enterprises, Inc.*, No. 98-6125, 2000 WL 799781, at *5 (6th Cir. June 14, 2000) (affirming summary judgment where plaintiff presented no evidence that she was treated differently from any other person, pregnant or otherwise, who failed to return to work after an approved leave)).

Plaintiff alleges no facts that could possibly demonstrate that Honeywell denied an extension of her STD benefits because of a pregnancy-related condition that rendered her unable to work. To the contrary, it denied those benefits based on her physician's representation that she no longer suffered from any disabling condition and was able to work. Nor has Plaintiff

11

alleged that there were any similarly situated employees, pregnant or not, who were afforded benefits when their physicians certified their ability to work. Count 3 of the SAC therefore fails to state a claim upon which relief can be granted.

    C.    <u>The SAC Lacks Factual Allegations Suggesting Any Causal Link Between Plaintiff FMLA Leave and the Decision to Deny Extension of Her Short Term Disability Benefits From Which the Court Could Infer a Retaliatory Motive.</u>

Likewise, the R&R's conclusion that Plaintiff stated a claim for FMLA retaliation strictly because of the temporal proximity between her FMLA leave and the April 19, 2018 Denial of Benefits is erroneous. To establish a claim for FMLA retaliation, Plaintiff must present direct evidence of retaliation or establish a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity, (2) Honeywell knew she was exercising her FMLA rights, (3) she suffered an adverse employment action, and (4) <u>a causal connection existed between the protected activity and the adverse employment action</u>. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

Plaintiff's FMLA retaliation claim fails because she does not allege a single fact suggesting a causal connection between her FMLA leave (which Honeywell approved) and the determination not to continue her STD benefits beyond March 27, 2019 based on her physician's documented statements.[6] Any such connection is based solely on Plaintiff's conjecture, which fails to rise to the level of plausibility. As this Court has observed, absent a causal link, a temporal connection between a plaintiff's protected conduct and the employer's alleged retaliatory action is insufficient to state a claim. *Sizemore v. Edgewood Board of Education*, No.

---

[6] The R&R states that Honeywell relies on "information outside the record" to contend that Cigna's denials of her STD benefits was consistent with the recommendation of her physician. (Doc. 29, PageID 1096). That is incorrect. As discussed above, n. 2, the April 19, 2018 Denial of the requested extension of Plaintiff's STD claim is expressly referenced in the SAC (Doc. 19, ¶¶ 38 and 39) and is the basis of Plaintiff's pregnancy discrimination and FMLA retaliation claims. As such, it is properly in the record.

1:19-cv-555, 2020 WL 1904726, at *8-9 (S.D. Ohio April 17, 2020) (Cole J.) (dismissing retaliation claim under Rule 12(b)(6) where complaint contained "no factual matter" plausibly suggesting that materially adverse actions were retaliatory and observing that plaintiff could not create a plausible inference of causality on temporal proximity alone); *Smith v. Advancepierre Foods, Inc*., No. 1:18-cv-242, 2020 WL 3488580, *13-14 (June 26, 2020) (Cole, J.) (granting summary judgment on FMLA retaliation claim where plaintiff could not show a causal link between his leave and his termination, i.e. that the defendant "had some type of retaliatory intent"). Here, beyond her conclusory allegation, Plaintiff does not plausibly allege any retaliatory intent underlying the decision not to extend her STD benefits. In fact, Plaintiff's speculation is belied by the fact that Cigna approved her STD benefits in the first instance, contemporaneous with her FMLA leave, and only denied extension of Plaintiff's STD benefits when her physician's recommendation dictated as such. Plaintiff's FMLA retaliation claim therefore is implausible on its face.

        D.      The R&R Improperly Relies on the OCRC's Finding on Plaintiff's Charge of Discrimination.

Several portions of the R&R refer to materials from the Ohio Civil Rights Commission to bolster factual allegations in the SAC, particularly in denying Honeywell's request to dismiss Counts 1 and 2 of the SAC. (Doc. 20, PAGEID 1074-1076.) While a court may refer to documents attached to or referenced in a complaint in deciding a motion under Rule 12(b)(6), the R&R's reliance upon these agency documents is distinguishable from the very cases cited in the R&R and inconsistent with the Sixth Circuit's conclusion that such materials carry "an evidentiary value of practically zero." *E.E.O.C. v. Ford Motor Co.*, No. 95-3019, 1996 WL 557800, at *10 (6th Cir. Sept. 30, 1996); *see also* Doc. 28, PageID 1048-1049.

13

In *Caplinger v. Uranium Disposition Services, LLC*, S.D.Ohio No. 2:08-CV-548, 2009 WL 367407, cited in the R&R (Doc. 20, PageID 1063, n.1), the court evaluated EEOC materials solely to determine whether the plaintiff met their jurisdictional deadline to file a charge of discrimination with the agency. In *Kovac v. Superior Dairy, Inc.*, 930 F.Supp.2d 857 (N.D.Ohio 2013), also cited in the R&R (Doc. 20, PageID 1063, n.1), the court referenced documents from the related EEOC and OCRC charge files to evaluate jurisdictional claims—the decision is unclear whether the court otherwise referenced those materials to evaluate the plaintiff's claims for purposes of Rule 12(b)(6). Neither case involved a situation where, as here, the court adopted statements contained in OCRC filings were used to supplement the plaintiff's deficient factual claims. Indeed, administrative agency materials are routinely prohibited as evidence in discrimination lawsuits by the Sixth Circuit and district courts within it. *E.E.O.C. v. Ford Motor Co.*, No. 95-3019, 1996 WL 557800, at *10 (6th Cir. Sept. 30, 1996). *See also Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009) (agreeing with the Ford Motor Court that an EEOC cause determination carries a zero probative value); *Ricker v. Food Lion, Inc.*, 3 Fed. Appx. 227, 231-232 (6th Cir. 2001) (district court did not abuse its discretion in declining to admit the EEOC cause determination because it was of little, if any, probative value). Plaintiff's OCRC materials should not be used to bolster the sufficiency of Plaintiff's allegations with respect to Counts 1 and 2 of the SAC.

## Conclusion

In addition to the R&R's recommended dismissal of counts 2 (insofar as it alleged age discrimination under Ohio law); 4, 6, 7, 8, 9, 10, 11, 12, 13 (FMLA interference) and 14, Honeywell requests that the Court modify the R&R to also dismiss Counts 1 (hostile work environment), 3 (pregnancy discrimination), and 8 (FMLA retaliation). The allegations in the

SAC do not rise to the level of severe and pervasive harassment as required to state a claim for racial harassment, and Count 1 should be dismissed. The SAC lacks any factual allegations from which the Court could infer that that Honeywell intended to discriminate against Plaintiff when it denied an extension of Plaintiff's short term disability benefits on April 19, 2018 or that other employees who did not suffer from pregnancy-related conditions were treated more favorably; accordingly, Count 3 should be dismissed. Finally, Count 8 should be dismissed, as the SAC does not contain any factual allegations from which the Court could infer that Honeywell retaliated against Plaintiff for taking FMLA leave in February 2018 when it denied an extension of her short term disability benefits on April 19, 2018.

Respectfully submitted,

/s/ *Monica L. Lacks*
Monica L. Lacks (0078649)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower
127 Public Square, Suite 4100
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
Email: monica.lacks@ogletree.com

Leah S. Freed
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2415 East Camelback Road, Suite 800
Phoenix, Arizona 85015
Telephone: (602) 778-3700
Facsimile: (602) 778-3750
Email: leah.freed@ogletree.com

*Attorneys for Defendant Intelligrated, Inc. d/b/a Honeywell Intelligrated*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2020, a copy of the foregoing *DEFENDANT'S PARTIAL OBJECTIONS TO ORDER AND REPORT AND RECOMMENDATION ON DEFENDANT'S PARTIAL MOTION TO DISMISS* was filed electronically with the Clerk of Court using the CM/ECF system and was served by regular mail and email at Plaintiff's residential address and email address below:

Malissa R. Harmon
1512 N. Breil Road
Middletown, OH 45402
malissaharmon24@gmail.com

*Pro Se Plaintiff*

/s/ Monica L. Lacks
*One of the Attorneys for Defendant*
*Intelligrated, Inc. d/b/a Honeywell Intelligrated*

44287813.2