## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**MALISSA R. HARMON,**

      **Plaintiff,**

      **v.**

**HONEYWELL INTELLIGRATED,**

      **Defendants.**

**Case No. 1:19-cv-670**
**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Litkovitz**

## OPINION AND ORDER

This cause is before the Court on Honeywell's Partial Objections (Doc. 32) to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 29). The Magistrate Judge recommends granting in part and denying in part Honeywell's Partial Motion to Dismiss (Doc. 24) Malissa R. Harmon's Second Amended Complaint (Doc. 19). For the reasons below, the Court **ADOPTS** the Magistrate Judge's R&R, **OVERRULES** Honeywell's Partial Objections, and thus **GRANTS** in part and **DENIES** in part Honeywell's Partial Motion to Dismiss. Accordingly, with respect to Harmon's Second Amended Complaint, the Court **DISMISSES WITH PREJUDICE** Counts II (to the extent it alleged an age discrimination claim under O.R.C. § 4112.02), IV, VI, VII, VIII, IX, X, XI, XII, XIII (to the extent it alleged FMLA Interference), and XIV. But Counts I, II (to the extent it alleges a claim under the ADEA), III and XIII (to the extent it alleges a FMLA retaliation claim) remain alive.

## BACKGROUND[1]

This is an employment discrimination case in which the plaintiff, Malissa R. Harmon, alleges that her employer, Honeywell Intelligrated, discriminated against her on the basis of race, sex, and age. Harmon is an African American woman who was between 41 and 45 years old at all times relevant to this suit. She was hired by her employer's predecessor company, Intelligrated, in 2010. (Honeywell bought Intelligrated, which became Honeywell Intelligrated, in 2016. For simplicity's sake, this Opinion will refer to the employer at all times as Honeywell.) In 2015, Honeywell promoted Harmon to Installation Administration Specialist. In that role, she was responsible for ensuring that the company adhered to certain subcontractor and vendor purchasing policies and processes.

Harmon's employment troubles began around the time she went on maternity leave in August 2015. Before taking leave, she had expressed an interest in her supervisor's position. In fact, Honeywell had placed Harmon in the specialist position

---

[1] This background is derived from the allegations set forth in the Second Amended Complaint and the exhibits attached to that complaint, including Exhibit K (Doc. 19-3)—a June 26, 2018, letter of determination by the Ohio Civil Rights Commission. Contrary to what Honeywell argues, the Court may consider this letter at the dismissal stage, either as an exhibit attached to the Second Amended Complaint, or as a public record, "so long as [it is] referred to in the Complaint and [is] central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Honeywell does not dispute that the letter is admissible under this rule. It only cites cases holding that such a letter may or may not be admissible as *evidence* at summary judgment or at trial, depending on other circumstances. *See E.E.O.C. v. Ford Motor, Co.*, No. 95-3019, 1996 WL 557800, at *10 (6th Cir. Sept. 30, 1996); *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009); *Ricker v. Food Lion, Inc.*, 3 Fed. App'x 227, 231–232 (6th Cir. 2001). Of course, that is irrelevant at the dismissal stage. For now, at least, Harmon offers the letter only as a source of facts to help flesh out the *allegations* in her Second Amended Complaint.

under the assumption that she would be trained by (and eventually replace) the current supervisor.

Harmon returned to work from maternity leave in October 2015. Upon her return, she discovered that Honeywell had named a new supervisor in an "acting" capacity. That person was Misty Sanderson. Harmon was surprised by the replacement because Honeywell had not posted the position as available. Nor had it posted a managerial position that Sanderson's husband was hired into around the same time. Sanderson and her husband are both white.

It fell on Harmon to train Sanderson on all the tasks that Harmon's former supervisor had been performing. After Harmon did so, Honeywell officially promoted Sanderson to the supervisor position.

More disappointments would follow for Harmon. Between late 2015 and 2016, for example, Sanderson allegedly promoted less qualified employees to the same position as Harmon, and it fell to Harmon to train them. Those employees were all white, and at least some were younger than Harmon. Harmon and Sanderson also had direct confrontations. Harmon claims that Sanderson started manifesting hostility towards her after Harmon questioned certain vendor-related invoices and payroll activity that management had submitted to Harmon for her approval. The hostility intensified when Harmon questioned vendor-related purchase orders and expenses that Sanderson's husband was responsible for overseeing.

After Harmon shared her concerns with a member of the Human Resources team, Sanderson's relationship with Harmon went further downhill. Specifically, in

January 2017, Sanderson lashed out verbally at Harmon, and Harmon filed a report about the incident. In her report, Harmon asserted that she "should never have to feel intimidated by anyone [she] work[s] for." (Second Am. Compl. Ex. K, Doc. 19-3, #862). Starting in February 2017, Harmon shared her frustrations with Honeywell managers about working with Sanderson and her belief that Sanderson was bullying her.

Things did not improve as the year progressed. In April 2017, Sanderson started stripping Harmon of her specialist tasks. Those tasks were then transferred to younger employees who were white. Nonetheless, Honeywell still expected Harmon to train those employees, and when those employees struggled to perform their specialist tasks, it expected Harmon to assist them and help clear up backlogs. On top of that, Sanderson allowed the young white employees to work from home but denied Harmon's requests to do the same.

Harmon further alleges that she was not the only woman of color who felt she was being mistreated by Sanderson. An African American woman named Jessica Holland and a Hispanic woman named Lucy Gomez both worked under Sanderson as members of the Installation team. Both Holland and Gomez asked to be transferred to other departments because of problems they were experiencing with Sanderson. Things got so bad for Gomez that she ended up resigning in 2017.

In an email stating the reasons for her resignation, Gomez wrote that she was resigning "due to constant intimidation by Mrs. Sanderson." (Second Am. Compl. Ex H, Doc. 19-2, #853). Gomez explained that she had worked for Honeywell "for 11 years

4

and never had an issue with a reporting supervisor until working under Mrs. Sanderson." (*Id.*). Gomez felt like Sanderson had bullied her in the months leading up to Gomez's resignation. Gomez reached her tipping point after Sanderson placed her on a Performance Improvement Plan (essentially, a reprimand) even though nothing in Gomez's last performance evaluation indicated that her work was lacking in any way. When Gomez questioned Sanderson about being placed on a Performance Improvement Plan, Sanderson mentioned that a certain supervisor had complained about Gomez's performance. But that made little sense to Gomez because she had not worked for that supervisor for over a year. And even if she had, that supervisor would have been included in her last evaluation, which, again, did not note anything lacking in her performance.

Meanwhile, notwithstanding the friction between Harmon and Sanderson, Sanderson rated Harmon as an "Outstanding Performer" at a performance review on August 11, 2017. But whatever goodwill that engendered between the two would dissipate shortly thereafter. The young white employees who had largely displaced Harmon's specialist role were still creating errors and backlogs because they lacked the necessary skills for the role. When Sanderson found out that Harmon informed an executive, Nick Choi, about this, Sanderson became upset. Sanderson and Harmon met with Sanderson's supervisor, Ryan Balzer, to discuss the issue. Balzer told Harmon not to communicate with executive managers like Choi.

That prompted Harmon to file a complaint with Human Resources that expressed her belief that she was being discriminated against. Sanderson and Balzer

found out about Harmon's complaint, which led to yet another meeting with all three of them. At that meeting, Sanderson and Balzer didn't just tell Harmon to stop sharing her concerns with executive management (though they did that, too). They also demanded that Harmon sign a Performance Improvement Plan (less than a month after she had been rated an outstanding employee). Harmon refused to sign.

Harmon next sought recourse outside of Honeywell. On September 27, 2017, Harmon filed a charge of discrimination and retaliation against Honeywell with the Ohio Civil Rights Commission, which began an investigation. Honeywell found out about the complaint in October 2017, and, after conducting its own investigation, Honeywell concluded that it "found no evidence of a hostile work environment or retaliation against" Harmon. (Second Am. Compl., Doc. 19, #824).

By January 2018, Honeywell had stripped Harmon of all her remaining specialist duties and transferred her to the accounting department. There, her duties consisted primarily of filing and delivering mail.

The worst for Harmon was not over. Around this time, she suffered a miscarriage and experienced a mental breakdown. Thereafter, on February 14, 2018, Harmon went on an approved FMLA medical leave. Harmon's next setback occurred a little over two months later. According to Harmon, on April 19, 2018, Honeywell denied her extension of Short-Term Disability income benefits that she was entitled to under Honeywell's Family Plan for Pregnancy. As a result of this denial, Harmon claims she suffered financial hardship and suffering.

6

Something finally went Harmon's way that summer. On July 26, 2018, the Ohio Civil Rights Commission revealed the results of its investigation. It found probable cause to believe that Honeywell had "engaged in … unlawful discriminatory practices in violation of Ohio Revised Code Chapter 4112." (Second Am. Compl. Ex. K, Doc. 19-3, #864). Following the Commission's finding of probable cause, Harmon alleges that Honeywell, through its insurance provider (Cigna), abruptly cancelled Harmon's Short Term Disability benefits without notice and denied her right to appeal that decision.

Harmon had been on approved medical leave as of July 18, 2018, and she would not return to work until November 12, 2018. On September 27, 2018, the Commission denied Honeywell's request for reconsideration of its original decision. Less than a week later, on October 4, 2018, Harmon's healthcare coverage was unexpectedly terminated. The next day, Harmon tragically suffered a second miscarriage.

After conciliation efforts through the Commission failed, Harmon filed this lawsuit, proceeding pro se, in August 2019. At the time, she was still employed by Honeywell, though not for much longer. Earlier in the month, Harmon claims that Honeywell and Cigna improperly lowered her Long Term Disability benefits from $2675 down to $100 per month. The following month, Harmon filed a complaint against Honeywell and Cigna with the Department of Insurance, alleging FMLA interference and retaliation. It was around this time that, according to Harmon, Honeywell defamed and slandered her to her co-workers and throughout the company, causing her embarrassment and humiliation. Finally, on October 3, 2019,

Honeywell fired Harmon. Less than two weeks later, Cigna issued Harmon backpay for wrongfully withholding Long Term Disability benefits from her.

At the time of her termination, Harmon had already amended her complaint once, and she would go on to amend her complaint once more. It is the latter complaint—Harmon's Second Amended Complaint (Doc. 19)—that is at issue here.

Harmon's Second Amended Complaint contains 14 different counts against Honeywell alleging various violations of federal and state law. Honeywell moved to dismiss the complaint, but only in part. Honeywell acknowledged that Count I of Harmon's Second Amended Complaint "contained minimally sufficient allegations to state claims for race discrimination generally under Title VII and Ohio R.C. Section 4112.02." (Objs., Doc. 32, #1107). Honeywell also acknowledged that Count V of the Second Amended Complaint contained enough allegations to state a claim for retaliation under O.R.C. § 4112.02. But Honeywell moved to dismiss the rest of Harmon's claims, including Count 1 to the extent it alleged discrimination on the basis of a racially hostile work environment.

After a response brief filed by Harmon and a reply brief filed by Honeywell, the Magistrate Judge issued a Report & Recommendation (Doc. 29). The Magistrate Judge partially agreed and partially disagreed with Honeywell. More specifically, the Magistrate Judge recommended denying Honeywell's motion with respect to Counts I, II (to the extent it alleged a claim under the ADEA), III, and XIII (to the extent it alleged an FMLA Retaliation claim). But the Magistrate Judge recommended granting Honeywell's motion with respect to every other claim it moved to dismiss,

namely: Counts II (to the extent it alleged an age discrimination claim under O.R.C. § 4112.02), IV, VI, VII, VIII, IX, X, XI, XII, XIII (to the extent it alleged FMLA Interference), and XIV.

Honeywell was the only party to object to the Report and Recommendation, and it did so only partially. It did not, of course, object to the counts that the Magistrate Judge recommended dismissing (perhaps more surprisingly, Harmon did not object to the Magistrate Judge's recommendation on those counts either). But Honeywell also declined to object to the Magistrate Judge's recommendation with respect to Count II. Recall that Honeywell had moved to dismiss that Count in its entirety, but the Magistrate Judge said that Honeywell's motion should be denied to the extent that Count II states an ADEA claim. Beyond that, though, Honeywell objected to the Magistrate Judge's Report and Recommendation with respect to the three remaining claim that the Magistrate Judge recommended against dismissing, specifically: Counts I (to the extent it alleges discrimination on the basis of a racially hostile environment), III, and XIII (to the extent it alleges FMLA Retaliation).

## LEGAL STANDARD

It is well-settled law that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). So, to survive a

Rule 12(b)(6) motion, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 545, 547 n.5.

In assessing plausibility, the Court must construe the factual allegations in the complaint in the light most favorable to the plaintiff, accept the well-pled allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Thus, in reviewing a motion to dismiss, the Court must distinguish between "well-pled factual allegations," which the Court must accept as true, and "naked assertions," which the Court need not accept as true. *See id.* at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (alteration and quotation omitted); *see also, e.g.*, *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (finding that because some of the plaintiff's factual allegations were "not well-pleaded," "their conclusory nature 'disentitles them to the presumption of truth'") (quoting *Iqbal*, 556 U.S. at 681); *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020) ("[T]he

court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events....").

In the discrimination context, a plaintiff is not required to prove a prima facie case to survive a motion to dismiss. *See Swierkiewciz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (noting the Supreme Court "has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss"); *Jackson v. Crosset Co.*, 33 F. App'x 761, 762 (6th Cir. 2002) ("[T]he *McDonnell Douglas* framework is an evidentiary standard, not a pleading standard."). In fact, the Supreme Court has rejected the argument that a Title VII complaint is subject to any kind of heightened pleading standard, because this would "too narrowly constric[t] the role of the pleadings." *Swierkiewciz*, 534 U.S. at 511 (alteration original) (quotation omitted). Still, this does not mean that the pleading rules in discrimination cases are any less stringent than pleading standards for other federal causes of action. *See Smith v. Wrigley Mfg. Co.*, 749 F. App'x 446, 449 (6th Cir. 2018) (noting *Swierkiewciz* "offers no gateway for a plaintiff to side-step the plausibility standard laid out in *Twombly* and *Iqbal*"). Instead, "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewciz*, 534 U.S. at 511.

Moreover, while a plaintiff need not establish a prima facie case at the pleading stage, the elements of a prima facie case are nonetheless aspects to consider when determining the plausibility of a discrimination claim. *See, e.g., Towns v. Memphis/Shelby Cnty. Health Dep't.*, No. 17-cv-02626, 2019 WL 639050, at *4 (W.D.

11

Tenn. Jan. 25, 2019), report and recommendation adopted, 2019 WL 639025 (W.D.

Tenn. Feb. 14, 2019) ("While a Title VII plaintiff need not establish a prima facie case

at the motion to dismiss stage, courts have looked to the prima facie requirements

when determining whether a Title VII plaintiff has pleaded an actionable claim.");

*White v. Adena Health Sys.*, No. 2:17-cv-593, 2018 WL 3377087, at *4 (S.D. Ohio July

11, 2018) (discussing the prima facie elements in the context of a motion to dismiss

several Title VII claims). Still, the Court must ultimately determine plausibility by

employing its "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## LAW AND ANALYSIS

**A.  The Court GRANTS Honeywell's Motion with respect to Counts II (to the extent it alleges an age discrimination claim under O.R.C. § 4112.02), IV, VI, VII, VIII, IX, X, XI, XII, XIII (to the extent it alleges FMLA Interference), and XIV of Harmon's Second Amended Complaint.**

The Court first addresses those counts that the Magistrate Judge

recommended should be dismissed, and to which Harmon did not object. The R&R,

which the Magistrate Judge filed on September 14, 2020, advised both parties that a

failure to object within the 14 days specified by the R&R may result in forfeiture of

rights on appeal, which includes the right to District Court review. (R&R, Doc. 29,

#1098); *see also Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that

Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a

magistrate's report to which no objections are filed."); *Berkshire v. Beauvais*, 928 F.3d

520, 530 (6th Cir. 2019) (noting "fail[ure] to file an objection to the magistrate judge's

R&R … is forfeiture"); 28 U.S.C. § 636(b)(1)(C). The time for filing objections has long

since passed, and the plaintiff has not filed any. Therefore, the Court **ADOPTS**, in relevant part, the Magistrate Judge's Report and Recommendation and **DISMISSES WITH PREJUDICE** the Plaintiff's Second Amended Complaint with respect to Counts II (to the extent it alleges an age discrimination claim under O.R.C. § 4112.02), IV, VI, VII, VIII, IX X, XI, XII, XIII (to the extent it alleged FMLA Interference), and XIV.

**B.    The Court DENIES Honeywell's Motion with respect to Counts I, II (to the extent it alleges an ADEA claim), III, and XIII (to the extent it alleges a FMLA Retaliation claim).**

      **1.    Honeywell does not object to the Magistrate Judge's recommendation that the Court deny Honeywell's Motion with respect to Count II (to the extent it alleges an ADEA claim).**

As noted above, the Court adopts the Magistrate Judge's recommendation that Count II of Harmon's Second Amended Complaint be dismissed to the extent it alleges an age discrimination claim under O.R.C. § 4112.02. Although Honeywell originally moved to dismiss Count II in its entirety, Honeywell does not now object to the Magistrate Judge's recommendation that Honeywell's motion be denied to the extent Count II alleges an ADEA claim (which the Court construes as a tacit concession that Harmon has plausibly alleged an ADEA claim). Because Honeywell has forfeited the Court's review of that issue, *Smith v. Detroit Fed'n of Teachers, Local 231, etc.*, 829 F.2d 1370, 1374 (6th Cir. 1987), the Court **ADOPTS** the Magistrate Judge's Report & Recommendation with respect to that issue and **DENIES** Honeywell's Motion to Dismiss Count II to the extent it alleges an ADEA claim.

### 2. Harmon States a Claim Alleging Discrimination on the Basis of a Racially Hostile Environment.

Honeywell conceded that Count I of Harmon's Second Amended Complaint "minimally satif[ied] the plausibility requirement," (Honeywell Mot. to Dismiss, Doc. 24, #924) to allege a claim of race discrimination under both Title VII and O.R.C. § 4112.02. Thus, Honeywell did not move to dismiss Count I in its entirety. Honeywell *did*, however, move to dismiss Count I to the extent it alleged a claim under either Title VII or O.R.C. § 4112.02 for a racially hostile workplace. The Magistrate Judge recommended denying Honeywell's motion on that issue. The Court agrees with the Magistrate Judge.

Courts analyze claims for hostile work environment brought under O.R.C. § 4112.02 by using the same standards that apply to such claims brought under Title VII. *Birch v. Cuyahoga Cnty. Prob. Court*, 392 F.3d 151, 163 (6th Cir. 2004). To establish a prima-facie case of a racially hostile work environment, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009).

Harmon's allegations plausibly satisfy every element. Honeywell does not seriously dispute that Harmon has satisfied the first and fifth elements. That is, Honeywell does not dispute that Harmon is a member of a protected class and that, to the extent she suffered racial harassment, that harassment is attributable to

14

Honeywell. Instead, Honeywell seems to take issue with the Magistrate Judge's conclusion that Harmon satisfies the second, third, and fourth elements of her claim. In other words, Honeywell disputes that Harmon has suffered the type (or amount) of racial harassment that gives rise to liability under Title VII or O.R.C. § 4112.02. Or, to use Honeywell's own words, Honeywell contends that "the factual allegations in the [Second amended Complaint], even if established and considered as a whole, fall far short of the requisite 'discriminatory intimidation, ridicule or insult' sufficient to alter the conditions of Plaintiff's employment or create an abusive working environment." (Objs., Doc. 32, #1110–1111).

Honeywell is wrong. Harmon's Second Amended Complaint details how year after year she allegedly suffered one humiliation after another—most or all of which were plausibly driven by her race. To recount a few of those details: Honeywell passed over Harmon for promotions while promoting white employees—some of whom essentially replaced Harmon's position as a specialist. The (alleged) fact that Harmon had to train virtually all of those employees and occasionally assist some of them as they struggled to perform their work duties plausibly suggests that these employees were less qualified than Harmon for the positions she sought or was demoted from. That, combined with the allegation that all of the employees who received preferential treatment were white, supports an inference that Harmon was passed up for promotions and demoted because she was not white.

Harmon also alleges that her white supervisor, Sanderson, regularly intimidated and bullied her and that Harmon informed Honeywell managers about

15

Sanderson's abusive behavior in a series of emails she began sending in 2017. Harmon even notes a specific confrontation when Sanderson lashed out at her so badly that she felt compelled to file a report about the incident. Then there's the allegation that Sanderson placed Harmon on a Performance Improvement Plan less than a month after rating her an Outstanding Employee.

That these events occurred while Sanderson was replacing Harmon with less-qualified white employees might itself be enough to suggest that Sanderson bullied Harmon at least partly because of her race. But that conclusion seems even more plausible when combined with Harmon's suggestion that Sanderson only mistreated non-white employees. Harmon's allegation about how two such employees, Holland and Gomez, asked for a transfer to other departments because of problems they were experiencing with Sanderson further hammers the point home. And Harmon's supporting documentation illustrating the allegedly unfair way Sanderson treated Gomez (i.e., intimidating Gomez and placing her on a Performance Improvement Plan) lends further credence to Harmon's claim. (*See* Second Am. Compl. Ex. H, Doc. 19-2, #852–54).

True, as Honeywell notes, Harmon does "not allege a single comment, slur, joke, or other statement concerning [her] race." (Objs., Doc. 32, #1109). But in the Sixth Circuit, a plaintiff may prove racial harassment by "comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." *Bradley v. Arwood*, 705 F. App'x 411, 417–18 (6th Cir. 2017) (quoting *Williams v. CSX Transp. Co., Inc.* 643 F.3d 502, 511 (6th Cir. 2011)). Harmon need

16

not allege that she was the target of racial slurs, comments, or jokes. Instead, she may allege facts showing that "the challenged actions 'would not have occurred but for the fact that [she] was African American.'" *Id.* at 418 (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999)). Harmon easily meets that standard here.

Many of the cases that Honeywell cites for support arise in different procedural postures (i.e., summary judgment). But consider one arising at the dismissal stage (like this one) and that Honeywell relies on extensively. *See Breeden v. Frank Brunckhorts Co.*, No. 2:19-cv-5515, 2020 WL 1929344, at *4 (S.D. Ohio April 21, 2020). There, the court held that the complaint failed to provide "sufficient factual allegations for the Court to reasonably infer that the alleged conduct was severe or pervasive enough to create a sexually hostile or abusive work environment." *Id.* at *10. The problem was that "for most of the incidents that the plaintiff set forth, she fail[ed] to provide any context for when they occurred." *Id.* (alterations omitted). Moreover, other than a seemingly isolated incident in which a paper had been ripped from the plaintiff's hand, the plaintiff did "not allege that any of the incidents involving her co-workers or superiors were directed toward her or that they made it difficult for her to do her job." *Id.*

Contrast that with the situation here. Harmon was repeatedly passed up for promotions, demoted and relegated to performing menial tasks, and bullied to such an extent that she sent multiple emails to management about it. She also provides enough context for the Court to infer roughly when these events occurred (often she provides the specific month or day), and for the Court to infer that they *plausibly*

17

occurred because of her race. Harmon has thus sufficiently alleged that Honeywell was so "permeated with discriminatory intimidation, ridicule, and insult," that it was "sufficiently severe or pervasive to alter the conditions of" Harmon's employment "and create an abusive working environment." *Grace v. USCAR*, 521 F.3d 655, 678–79 (6th Cir 2008).

### 2.    Harmon States a Claim Alleging Pregnancy Discrimination.

Harmon also plausibly states a claim based on pregnancy discrimination under the Pregnancy Discrimination Act and O.R.C. § 4112.02(A). Here again, the state statute is "evaluated generally under the same substantive standards" as the federal statute. *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569 (6th Cir. 2006).

To establish a prima facie case for pregnancy discrimination, a plaintiff must prove that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Id.* (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)).

Honeywell does not dispute (at least at the motion to dismiss stage) that (1) a miscarriage is pregnancy-related condition under the PDA, *see Ingarra v. Ross Educ., LLC*, No. 13-cv-108822, 2014WL 688185, at *4 (E.D. Mich. Feb. 21, 2014); (2) Harmon was qualified for her job; and (3) the decision to deny Harmon benefits counts as an adverse employment decision under the relevant law. It only challenges the fourth element: whether Harmon has plausibly alleged a nexus between her miscarriage and Honeywell's denial of her Short Term Disability benefits.

18

As relevant here, the Sixth Circuit has squarely held that "[t]emporal proximity can ... satisfy the nexus requirement in the pregnancy discrimination context." *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006). That said, in order for temporal proximity alone to demonstrate a nexus, the adverse employment action must occur soon after the pregnancy. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Although what counts as "soon after" may pose difficult line drawing problems in some cases, the Court need worry about that here. That is because the Sixth Circuit has already found that a lapse of only two months is enough "to establish a link" between a pregnancy condition and an adverse employment action. *Asmo*, 588 F.3d at 594.

Here, after suffering a miscarriage, Harmon went on an approved FMLA medical leave on February 14, 2018. A little over two months later, on April 19, 2018, Honeywell denied Harmon disability benefits to which she claims she was entitled. As *Asmo* is, in relevant part, materially indistinguishable from the facts here, the Court concludes that Harmon has plausibly alleged a nexus between her miscarriage and the denial of her benefits.

Still, Honeywell maintains that there is no nexus because, according to Honeywell, it did not deny her disability benefits *because of* her miscarriage. To support its argument, Honeywell attaches the benefits denial letter in which Cigna explained that it was denying Harmon an extension of benefits because "the medical information provided to [its] office [did] not demonstrate an impairment of such severity that would have prevented [her] from performing the duties of [her] job."

19

(Mot. to Dismiss Ex. B, Doc. 24-2, #952). In response, Harmon attaches a letter from her doctor which, according to her, shows that her disability continued through April 30, 2018.

The Court agrees with the Magistrate Judge that it would be inappropriate to resolve this *factual* dispute at the motion to dismiss stage. Courts are generally confined to considering the plaintiff's complaint (and attached exhibits) in ruling on 12(b)(6) motions to dismiss. Honeywell is right that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewciz*, 534 U.S. at 506. But here, even if Harmon arguably referred to the denial letter, the Court doubts that the letter is "central" to her claim. Harmon is not denying that Honeywell provided facially neutral reasons for denying her request for a benefits extension. Rather, Harmon is saying that, whatever Honeywell's *stated* reasons for denying Harmon benefits, the *real* reason it denied her benefits is because of her pregnancy condition. Again, that presents a question of fact that *might* be resolved at the summary judgment stage, when the Court can consider evidence produced in discovery, but it is inappropriate to consider such documents, and resolve such a factual issue, at the dismissal stage.

### 3.  Harmon States a Claim Alleging FMLA Retaliation

Harmon alleged two claims for relief in Count XIII of her Second Amended Complaint: FMLA interference and FMLA retaliation. As already noted, because

Harmon failed to object to the Magistrate Judge's recommendation that the Interference claim be dismissed, the Court dismisses that claim. But the Magistrate Judge also recommended *denying* Honeywell's motion to dismiss the FMLA retaliation claim. Again Honeywell objects to the Magistrate Judge's recommendation, and again the Court agrees with the Magistrate Judge.

To establish a prima facie retaliation claim, a plaintiff must show that (1) she was engaged in a protected activity as defined by the FMLA; (2) defendant knew she was using FMLA; (3) she was subjected to an adverse employment action after defendant learned that she was exercising her FMLA rights; and (4) there was a causal connection between the protected activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). Honeywell only disputes whether Harmon has adequately alleged a causal connection between the alleged protected activity (taking approved FMLA leave) and the alleged adverse employment action (the denial of Short Term Disability benefits).

As with her pregnancy discrimination claim above, at least some authority in the Sixth Circuit indicates that a time lapse of just two months between protected activity and retaliatory conduct is enough to establish a causal connection. *See Rhodes v. R & L Carriers, Inc.*, 491 Fed. App'x 579 (6th Cir. 2020) (holding that a plaintiff adequately pled an FMLA retaliation claim where the adverse employment action occurred "mere months" after the employee engaged in protected activity); *see also Stein v. Atlas Indus., Inc.*, 730 F. App'x 313, 319 (6th Cir. 2018) (collecting cases

21

and finding that the Sixth Circuit draws the line for temporal proximity alone satisfying causation at just shy of the ten-week mark).

That said, as Honeywell points out, and as this Court has acknowledged elsewhere, *see Smith v. Advancepierre Foods, Inc.*, No. 1:18-CV-242, 2020 WL 3488580, at *14 (S.D. Ohio June 26, 2020), the Sixth Circuit has not always been consistent on this issue. Some Sixth Circuit caselaw suggests that temporal proximity, standing alone, may never be enough to establish a causal connection for a FMLA retaliation claim. *See, e.g.*, *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010); *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 471–72 (6th Cir. 2012).

These potentially conflicting lines of case law leave the Court at a bit of a loss. As noted, ample Sixth Circuit authority suggests that the temporal proximity at issue here (less than ten weeks) may be enough, in and of itself, to establish a causal connection. But other Sixth Circuit authority appears to hold, or at least state, that temporal proximity alone may never be enough. The Court determines it need not resolve that issue here at the motion to dismiss stage. The former line of case law would suggest that Harmon has at least *plausibly* alleged a causal connection. And, in any event, as other claims survive dismissal, that means this case will proceed into discovery. The further factual development that occurs during discovery may shed additional light on causation, thereby allowing the Court to avoid the thorny legal issue of whether temporal proximity, in and of itself, can suffice for causation purposes. Moreover, during the intervening time, the Sixth Circuit may further

clarify the law on this front. Either way, the Court concludes that dismissing Harmon's FMLA retaliation claim is inappropriate at this stage of the litigation.

## CONCLUSION

Based on the above, the Court **ADOPTS** the Magistrate Judge's R&R (Doc. 29), **OVERRULES** Honeywell's Partial Objections (Doc. 32), and thus **GRANTS** in part and **DENIES** in part Honeywell's Partial Motion to Dismiss (Doc. 24). Accordingly, with respect to Harmon's Second Amended Complaint, the Court **DISMISSES WITH PREJUDICE** Counts II (to the extent it alleged an age discrimination claim under O.R.C. § 4112.02), IV, VI, VII, VIII, IX, X, XI, XII, XIII (to the extent it alleged FMLA Interference), and XIV. But Counts I, II (to the extent it alleges a claim under the ADEA), III and XIII (to the extent it alleges a FMLA retaliation claim) live to fight another day.

**SO ORDERED.**

June 10, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**